1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH A. IOPPOLO; DAVID MCCRAY and SALLY MCCRAY, husband and wife; SCOTT KASEBURG and KATHRYN KASEBURG, husband and wife; CAR LOT LLC, a Washington limited liability company; FLOOR CRAFT BUILDING LLC, a Washington limited liability company; FREY REED BUILDING LLC, a Washington limited liability company; and WOODINVILLE LANDING LLC, a Washington limited liability company, for themselves and a Class of Similarly Situated Plaintiffs, <br><br> Plaintiffs, <br> vs. <br><br> PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, apolitical subdivision of the State of Washington; CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation; and CASCADE WATER ALLIANCE, a municipal corporation, <br><br> Defendants. | No. 2:15-cv-358 <br><br><br> **COMPLAINT** |

COME NOW Plaintiffs Joseph Ioppolo, David and Sally McCray, Scott and Kathryn

Kaseburg, Car Lot LLC, Floor Craft Building LLC, Frey Reed Building LLC, and Woodinville

Complaint - Page 1

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

Landing, LLC, for themselves and on behalf of a class of similarly situated landowners, pursuant to Rule 23 of The Federal Rules of Civil Procedure, allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are landowners who own fee title in land adjoining an approximately 25-mile railroad right-of-way in King County, Washington that runs generally from Renton to Woodinville with a spur through Redmond.

2.      Plaintiffs seek certification of a Class of landowners who also own fee title in land adjoining the railroad right-of-way and who also own the fee in the railroad right-of-way itself because the railroad originally obtained an easement for their railroad purposes only, as has already been held by the Honorable Charles F. Lettow in *Haggart v. United States*, 103 Fed. Cl. 70 (Fed. Cl. 2012). Those landowners adjacent to the railroad right-of-way where Judge Lettow ruled that the railroad owned fee title in the right-of-way are not part of the defined class of persons in this lawsuit.

3.      The railroad, both at the time of the acquisition of the right-of-way in the 1890s and early 1900's and the abandonment of the right-of-way in 2008, acquired an easement for railroad purposes over and through the adjacent landowners' land that was limited to the surface of the adjacent landowners' fee ownership in their land.

4.      The Port of Seattle ("Port"), Puget Sound Energy, Inc. ("PSE"), King County, Central Puget Sound Regional Transit Authority ("Sound Transit"), and Cascade Water Alliance ("Cascade"), by and through The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act"), and a series of related transactions, contracts, and deeds have improperly

Complaint - Page 2

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

and illegally violated Plaintiffs' fee ownership in the right-of-way, including Plaintiffs' fee ownership in their subsurface and aerial rights.

5.     By and through the Trails Act, Plaintiffs' fee ownership in the abandoned railroad right-of-way is now burdened with an easement for a hiking and biking trail on the surface of Plaintiffs' land with the possible reactivation of a railroad pursuant to the Trails Act.

6.     Plaintiffs seek, among other things, damages for the actions by Defendants to defraud Plaintiffs of their fee ownership rights by and through the Trails Act, for trespass, for inverse condemnation, and for slander of title, and for actual and statutory damages, attorneys' fees, and costs.

## THE PARTIES

7.     Plaintiff Joseph A. Ioppolo is a resident of King County, Washington who resides at 5201 Ripley Lane N, Renton. Joseph Ioppolo's property, Parcel No. 3343302850, includes the fee title to the former railroad right-of-way adjacent to his property that is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.

8.     Plaintiffs David and Sally McCray are husband and wife who reside in King County, Washington at 6815 Ripley Lane SE, Renton, WA.  David and Sally McCray's property, Parcel No. 3343302540, includes the fee title to the former railroad right-of-way adjacent to their property which is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.

9.     Plaintiffs Scott and Kathryn Kaseburg are husband and wife and are residents of King County, Washington who reside at 5443 Pleasure Point Lane SE, Bellevue, WA.  Scott and Kathryn Kaseburg's property, Parcel No. 6828700045, includes the fee title to the former

Complaint - Page 3

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

railroad right-of-way adjacent to their property that is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.

10.     Plaintiff Car Lot LLC is a resident of King County, Washington who owns property adjacent to the former railroad right-of-way at 7760 159th Place NE, Redmond, Washington.  Car Lot LLC's property, Parcel No. 9270700035, includes the fee title to the former railroad right-of-way adjacent to their property which is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.

11.     Plaintiff Floor Craft Building LLC is a resident of King County, Washington who owns property adjacent to the former railroad right-of-way at 7842 159th Place NE, Redmond, Washington.  Floor Craft Building LLC's property, Parcel No. 9270700020, includes the fee title to the former railroad right-of-way adjacent to their property which is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.

12.     Plaintiff Frey Reed Building LLC is a resident of King County, Washington who owns property adjacent to the former railroad right-of-way at 7840 159th Place NE, Redmond, Washington.  Frey Reed Building LLC's property, Parcel No. 9270700025, includes the fee title to the former railroad right-of-way adjacent to their property which is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act.

13.     Plaintiff Woodinville Landing LLC is a resident of King County, Washington who owns property adjacent to the former railroad right-of-way at 17280 Woodinville Redmond Road NE and 17270 Woodinville Redmond Road NE in, Woodinville, Washington.  Woodinville Landing LLC's property, Parcel Nos. 0926059032 and 0926059162, includes the

Complaint - Page 4

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

fee title to the former railroad right-of-way adjacent to their property which is now subject to an easement for an interim trail and possible future railroad reactivation pursuant to the Trails Act

14.     Defendant Port is a Washington municipal corporation and a port district that runs Seattle's seaport and airport.  The Port was authorized by the Port District Act and was then created and was approved by the voters of King County, Washington on September 5, 1911.  It is run by an elected five-member commission.

15.     Defendant PSE is a Washington corporation and a private for profit electric and gas utility company operating in the State of Washington.

16.     Defendant King County is a home rule charter county and a political subdivision of the State of Washington.

17.     Defendant Sound Transit is a Washington municipal corporation, responsible for the construction and operation of high-capacity public transportation systems within its district.

18.     Defendant Cascade is a municipal corporation comprised of seven municipalities (five cites and two water and sewer districts) in the Puget Sound region.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Defendants only obtained an easement for trail use over the surface of Plaintiffs' property by and through implementation of the Trails Act, 16 U.S.C. § 1247(d), and because this action presents a claim arising under the laws of the United States as well as the laws of Washington.

20.     Pursuant 28 U.S.C. § 1391(b), venue is proper because (1) all Defendants reside in this judicial district; (2) the events or omissions giving rise to the claims of Plaintiffs occurred

Complaint - Page 5

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

in this judicial district; and (3) all of the property that is the subject of this action is situated in this judicial district.

## FACTS PERTINENT TO ALL CAUSES FOR RELIEF

21.     In the late 1890s and early 1900's, the Northern Pacific and Puget Sound Shore Railroad Company acquired land to construct their railroad right-of-way from Renton to Woodinville with a spur track through Redmond.  The railroad generally acquired the land to build their right-of-way by voluntary grants, condemnations, and prescriptive easements.

22.     The right-of-way obtained by the railroad from Renton to Woodinville with the spur through Redmond is approximately 25 miles long.  In order to acquire the right-of-way for the entire 25 miles, the railroad negotiated hundreds of deeds.  It has been determined by Judge Charles F. Lettow of the United States Court of Federal Claims in *Haggart v. United States*, 103 Fed. Cl. 70 (Fed. Cl. 2012), that approximately half of the 25 mile corridor from Renton to Woodinville with a spur track through Redmond was obtained by easement deeds or condemnations and that the other half was obtained by the railroad in fee.  Judge Lettow concluded that the easements obtained by the railroad for approximately one-half of the entire length of the corridor from Renton to Woodinville were conveyances of easements to the railroad for their railroad purposes only.  Judge Lettow's conclusion was based on over 100 years of case law from the Washington Supreme Court which mandates the same result.

23.     The Northern Pacific and Puget Sound Shore Railroad Company changed names and ownership on several occasions over many decades.  After many changes in ownership and acquisition of the line from previous railroads, the Burlington Northern Sante Fe Railroad

Complaint - Page 6

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

("BNSF") became the rail operator.  BNSF operated the railroad line over the railroad corridor for a time and ultimately stopped using the right-of-way for the operation of a railroad.

24.     The Trails Act authorizes the Surface Transportation Board ("STB"), the governmental entity responsible for regulating railroads and their common carrier obligations, to "preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails."

25.     Congress enacted the Trails Act to address the national problem of railroad abandonments and the loss of the national network of rights-of-way.  The Trails Act authorizes the STB to preserve railroad corridors or rights-of-way not currently in use for train service for possible future rail use by converting those rights-of-way into recreational trails.  In essence, the Trails Act allows a railroad to relinquish responsibility for a rail line by transferring the corridor to an entity that will use it as a recreational trail.  Although the corridor is not used as a railroad during the period of interim trail use, it remains intact for potential future use for rail service. This process is called "railbanking."

26.     Pursuant to the Trails Act, before a railroad corridor may be converted into a recreational trail, the railroad must either initiate abandonment proceedings with the STB under 49 U.S.C. § 10903 or seek an exemption from the ordinary abandonment procedures under 49 U.S.C. § 10502.  Under either procedure, abandonment of the rail line and right-of-way will not be approved by the STB if a qualified trail provider submits to the STB a request to use the right-of-way as a recreational trail and the railroad agrees to negotiate with the potential trail operator.

27.     If the trail provider submits a statement of willingness to assume financial and legal responsibility to the STB and the railroad, the STB will issue a Notice of Interim Trail Use

Complaint - Page 7

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

or Abandonment (hereinafter "NITU") which preserves the STB's jurisdiction over the rail corridor while the parties negotiate an Interim Trail Use Agreement.  49 C.F.R. § 1152.29(c).

28.    The NITU preserves the STB's jurisdiction over the rail corridor, allows the railroad to discontinue operations and remove track and equipment, and affords the railroad and the trail provider 180 days to negotiate a railbanking and Trails Use Agreement.  During this period, the railroad will negotiate an agreement for the transfer of the corridor to the trail operator.

29.    If an agreement is ultimately reached, the NITU automatically authorizes the interim trail use.  If the STB takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of the railroad to reassert control of the property for restoration of rail service.  If an agreement is not reached, the railroad will be allowed to abandon the line, at which time the STB's jurisdiction over the right-of-way terminates and the fee ownership in the rail corridor returns to the adjacent landowners.

30.    On August 11, 2008, BNSF filed a Petition for Exemption to abandon the line with the STB.  On September 18, 2008, King County filed a request for Issuance of Notice of Interim Trail Use/Railbanking.  The request for a NITU from the STB was filed pursuant to the Trails Act.

31.    The STB issued three NITUs for the abandoned railroad corridor on October 27, 2008 and November 28, 2008 pursuant to the Trails Act.  The NITUs amounted to a taking of Plaintiffs' reversionary interest in the surface of the right-of-way under well-settled federal authority.

Complaint - Page 8

4831-9988-4834v.1

32.     On May 12, 2008, BNSF and the Port, along with King County, entered into a Purchase and Sale Agreement, whereby BNSF sold the "North Rail Line," defined as that portion of the abandoned right-of-way north of milepost 28.8 in Woodinville to milepost 38.4 in Snohomish County, to the Port for $106,903,000.  BNSF made no representations or warranties concerning title to the North Rail Line and specifically stated that the "Port and County acknowledge and affirm that BNSF may not hold fee simple title to the Property, that BNSF's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes" and that the "Port and County are willing to accept the Property on that basis."  The "South Rail Line," was the subject of a separate agreement entered into on the same day.

33.     On the same day as the Purchase and Sale Agreement, May 12, 2008, BNSF, the Port, and King County entered into a Donation Agreement whereby BNSF "donated" the "South Rail Line" portion of the right-of-way to the Port and King County.  The South Rail Line was defined as the "real and personal property comprising the Woodinville Subdivision from milepost 23.45 in Woodinville south to milepost 5.0 in Renton."  BNSF made no representations or warranties concerning title and specifically stated that the "Port and County acknowledge and affirm that BNSF may not hold fee simple title to the Property, that BNSF's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes" and that "Port and County are willing to accept the Property on this basis."

34.     In November of 2009, the Port, King County, PSE, Sound Transit, and Cascade, entered into a Memorandum of Understanding to work together to obtain and secure property rights in the abandoned railroad corridor in support of transportation, recreation, and utility uses.

Complaint - Page 9

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

35.     The Memorandum of Understanding provides that it was their express purpose that the abandoned railroad corridor be "developed and operated to ensure that it is available for the dual purpose of recreational trail and public transportation use."

36.     On December 18, 2009, pursuant to the Purchase and Sale Agreement for the North Rail Line and the Donation Agreement for the South Rail Line, BNSF executed two Quit Claim Deeds to the Port.  BNSF, as grantor, in consideration of ten dollars, quit claimed their interest in the South Rail Line, which was an easement for railroad purposes on the surface of Plaintiffs' property, to the Port, as grantee.

37.     Pursuant to the Trails Act and its implementing regulations, King County entered into an interim Trail Use Agreement with BNSF on February 5, 2010 to railbank the railroad corridor from Woodinville to Renton as well as the Redmond Spur from Woodinville to Redmond, subject to reactivation for the resumption of interstate freight service.  The interim Trail Use Agreement designated King County as the interim trail user for railbanking purposes.

38.     The Port, through the Quit Claim Deed from BNSF, and pursuant to the Trails Act, acquired BNSF's easement over the surface of the right-of-way, which pursuant to the Trails Act, is now an easement for a hiking and biking trail with the possible reactivation of a railroad.  The Port, then, pursuant to agreements with King County, assigned some of the surface rights in the railroad corridor to King County and then improperly and illegally attempted to usurp the landowners' fee interests in the aerial rights and improperly and illegally retained all rights to negotiate agreements with other utilities for the use of the right-of-way, including subsurface and aerial rights, which the Port had no rights to, and claimed all revenues derived from any such agreements.

Complaint - Page 10

4831-9988-4834v.1

39.     After purportedly acquiring BNSF's right, title and interest in the railroad corridor, the Port granted nonexclusive perpetual easements to PSE over, under, along, across and through the former railroad right-of-way.   The purported easement includes aerial and subsurface rights and PSE intends to utilize the Plaintiffs' subsurface rights and aerial rights in the right-of-way pursuant to PSE's "Easement Agreements" to place and maintain overhead and underground facilities and equipment.   The Port purportedly reserved the right to sell Plaintiffs' aerial or subsurface rights to other utilities.   In pertinent part, the Easement Agreement provides:

1.     **Purpose.**  Grantee shall have the right to use and enjoy the Easement Area for the following purposes:

a)  To construct, operate, maintain, repair, replace, improve, remove, enlarge, and use the Easement Area for one or more utility systems for purposes of transmission, distribution and sale of electricity.  Such systems may include, but are not limited to:

i.     **Overhead facilities.**   Poles, towers and other support structures with crossarms, braces, guys and anchors; electric transmission and distribution lines; fiber optic cable and other lines, cables and facilities for communications; transformers, street lights, meters, fixtures, attachments and any and all other facilities or appurtenances necessary or convenient to any or all of the foregoing; and

ii.     **Underground facilities.**   Conduits, lines, cables, vaults, switches and transformers for electricity; fiber optic cable and other lines, cables and facilities for communications; semi-buried or ground-mounted facilities and pads, manholes, meters, fixtures, attachments and any and all other facilities or appurtenances necessary or convenient to any or all of the foregoing.

b)  To construct, operate, maintain, repair, replace, improve, remove, enlarge, and use the Easement Area for Grantee's utility systems for purposes of transmission, distribution and sale of gas ("Gas Facilities").  Such Gas Facilities may include, but are not limited to underground facilities such as pipes, pipelines, mains, laterals, conduits, regulators and feeders for gas; semi-buried or ground-mounted facilities and pads, manholes, meters, fixtures, attachments and any and all other facilities or appurtenances necessary or convenient to any or all of Grantee's Gas Facilities.

Complaint - Page 11

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

40.    After purportedly acquiring BNSF's right, title and interest in the railroad corridor, the Port also granted a purported perpetual High Capacity Transportation Easement to Sound Transit on April 11, 2012.   The purported High Capacity Transportation Easement includes "the right to own or operate a High Capacity Transit System…, a perpetual non-exclusive easement…, in, on, under, over, along, across and through the Property for high capacity transportation purposes, including the installation, construction, use, operation, inspection, maintenance, repair, replacement, enhancement, expansion, improvement or removal of one or more High Capacity Transit Facilities… and for all purposes necessary, desirable or reasonably related to the development, construction or operation of a High Capacity Transit System, including placement of utilities…"  The Port made no warranty of title as to the Property or Easement Agreement and specifically advised Sound Transit that the Port "may not hold fee simple title to the Property and that the Port's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes."

41.    On December 11, 2012, King County adopted Ordinance No. 17503, which purportedly authorized the purchase of approximately 15 miles of the railroad corridor from the Port.  Ordinance No. 17503 sets forth the series of transactions whereby the right-of-way was acquired pursuant to the Trails Act, references the Memorandum of Understanding executed in 2009, mentions its cooperation with Sound Transit, states that King County will explore a variety of options to fund the acquisition and development of portions of the right-of-way to advance its trail, transportation, and utility system objectives, and authorizes the King County executive to execute a purchase and sale agreement with a purchase price of up to $15,800,000.

Complaint - Page 12

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

42.     Pursuant to Ordinance No. 17503, the Port and King County executed a Real Estate Purchase and Sale Agreement.  King County purportedly "acquired" portions of the abandoned railroad corridor between Woodinville and Renton for $15,000,000.  The property purportedly acquired by King County pursuant to the Real Estate Purchase and Sale Agreement was conveyed by the Port to King County with no representations or warranties of title of any kind or character and King County specifically "acknowledges and affirms that the Port may not hold fee simple title to the Property, that the Port's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes" and that "the County is willing to accept the Property on this basis."

43.     Pursuant to Ordinance No. 17503, and the Real Estate Purchase and Sale Agreement, the Port issued a Quit Claim Deed to King County on February 11, 2013.

44.     The Port only acquired a surface easement from BNSF pursuant to the Trails Act. King County could only and did only receive a surface easement by and through the Real Estate Purchase and Sale Agreement and Quit Claim Deed with and from the Port, but has repeatedly made false claims and representations of fee ownership.  PSE's easement from the Port, to the extent it purportedly grants any rights beyond the surface of Plaintiffs' land for a recreational trail, is invalid and unenforceable.  Sound Transit's easement from the Port is also invalid and unenforceable.  And, any purported rights granted to Cascade to utilize the subsurface or aerial rights on Plaintiffs' land is also invalid and unenforceable.

## COUNT I – CLASS ACTION

Plaintiffs, for their cause of action against all Defendants for Class Action, allege as follows:

Complaint - Page 13

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

45.     Plaintiffs incorporate by reference paragraphs 1-44 as though fully set forth herein.

46.     The representative Plaintiffs bring this Class Action on behalf of themselves and a class of persons under Rule 23(a) of the Federal Rules of Civil Procedure, and the Class is initially defined as all landowners in King County who owned land in fee adjacent to the railroad's right-of-way between Renton and Woodinville and on the spur track through Redmond where the railroad originally acquired an easement for their railroad purposes only.

47.     The proposed class is so numerous that joinder of all members is impracticable. The proposed Class will be made up of those fee landowners who owned parcels of property along the abandoned railroad right-of-way where the railroad merely obtain an easement for their railroad purposes only and where King County currently owns a surface easement by and through the Trails Act for a hiking and biking trail with the possible reactivation of a railroad.

48.     Prospective Class Members can be identified by a search of the records of the Tax Assessor and Recorder of Deeds in King County.   Through such a search, the Plaintiffs have determined that there are hundreds of individuals or entities who own fee parcels along the right-of-way where the railroad originally obtained an easement for railroad purposes only.

49.     The claims of all of the named Plaintiffs involve all of the same issues of law and fact as the proposed Class Members and are therefore common to each putative Class Member. The principal issue in this case is whether King County, who owns only a surface easement pursuant to the Trails Act, and the other Defendants, who improperly acquired any purported legal interest in Plaintiffs' property and/or are utilizing the Plaintiffs' subsurface or aerial rights

Complaint - Page 14

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

for any improper purpose, without obtaining consent and authorizations from Plaintiffs and without payment to Plaintiffs, are responsible for damages therefore.

50.     The claims of the named Plaintiffs are typical of the claims of the proposed Class. The claims of the named Plaintiffs, as well as the claims of the proposed Class Members, arise from the same set of facts and are premised upon the same legal theories under federal law, namely the Trails Act, and Washington State Property Law.

51.     The Plaintiffs, as representative parties, will fairly and adequately protect the interests of the proposed Class.  The named Plaintiffs and the proposed Class Members possess the same interest.  They have also suffered the same or similar injury—deprivation of their property rights.  Further, they seek the same remedy—compensation from the Defendants for violating their fee ownership rights.

52.     A Class Action is superior to any other available method for the fair and adjacent adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

53.     Further, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct for the Defendants or adjudication of individual claims would be dispositive of the claims of other Class Members not parties to this lawsuit and could substantially impair or impede their ability to protect their interests.

Complaint - Page 15

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## COUNT II – CONSPIRACY TO ILLEGALLY UTILIZE THE TRAILS ACT TO DEFRAUD PLAINTIFFS OF THEIR PROPERTY RIGHTS

Plaintiffs, for their cause of action against all Defendants for Conspiracy, allege as follows:

54.     Plaintiffs incorporate by reference paragraphs 1-53 as though fully set forth herein.

55.     BNSF's Petition for Exemption to abandon the railroad corridor, pursuant to the Trails Act, was filed on August 11, 2008.

56.     On September 18, 2008, pursuant to the Trails Act, King County filed a request for Issuance of a Notice of Interim Trail Use/Railbanking.

57.     The STB issued three NITU's for the railroad corridor on October 27, 2008 and November 28, 2008 pursuant to the Trails Act.  The NITU's amounted to a taking of Plaintiffs' reversionary interest in the surface of the right-of-way under well-settled federal authority.

58.     On May 12, 2008, three months before BNSF filed a Petition for Exemption to abandon the right-of-way with the STB, four months before King County filed a request for Issuance of Notice of Interim Trail Use/Railbanking, and five months before the STB even issued any NITU's for the abandoned railroad corridor, the Port and King County entered into a Purchase and Sale Agreement whereby BNSF sold the "North Rail Line" and the Port and King County entered into a Donation Agreement whereby BNSF "donated" the "South Rail Line" to the Port and King County.

59.     In November of 2009, all Defendants entered into a Memorandum of Understanding to work together to obtain and secure property rights in the abandoned railroad corridor in support of transportation, recreation, and utility uses, ostensibly utilizing and relying

Complaint - Page 16

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

on the Trails Act to announce and profess "acquired" property rights in the railroad corridor that the Trails Act and state law did not allow.

60.     The Memorandum of Understanding contains the express written purpose of the Defendants that the abandoned railroad corridor be "developed and operated to ensure that it is available for the dual purpose of recreational trail and public transportation use," which is not allowed under the Trails Act or state property law.

61.     Pursuant to the Trails Act and its implementing regulations, King County entered into an interim Trail Use Agreement with BNSF on February 5, 2010 and, although the Trails Act and the Trail Use Agreement allow for the construction of a hiking and biking trail on the surface of the railroad corridor, King County acted as if they acquired the fee ownership in the railroad corridor and that they could use the railroad corridor, including subsurface and aerial rights, for any public purpose, which was their intent even before implementation of the Trails Act.

62.     In furtherance of the conspiracy to utilize the Trails Act to defraud Plaintiffs of their property rights, the Port granted a perpetual easement to PSE over, under, along, across and through the former railroad right-of-way, which included aerial and subsurface rights and purportedly granted rights to PSE to place and maintain overhead and underground facilities and equipment.

63.     The Port also granted a purported perpetual High Capacity Transportation Easement to Sound Transit which purportedly allowed an easement "in, on, under, over, along, across and through" Plaintiffs property for high capacity transportation purposes, "including the installation, construction, use, operation, inspection, maintenance, repair, replacement,

Complaint - Page 17

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

enhancement, expansion, improvement or removal of one or more High Capacity Transit Facilities… and for all purposes necessary, desirable or reasonably related to the development, construction or operation of a High Capacity Transit System, including placement of utilities…"

64.     King County adopted Ordinance No. 17503 on December 11, 2012, which states that the right-of-way was acquired pursuant to the Trails Act, references the Memorandum of Understanding, mentions its cooperation with Sound Transit, and states that King County will explore a variety of options to fund the acquisition and development of portions of the right-of-way to advance its trail, transportation, and utility system objectives," all of which are not authorized by the Trails Act and violate Plaintiffs' fee ownership interests in the railroad corridor.

65.     The Port issued a Quit Claim Deed to King County on February 11, 2013.  Since the Port only acquired a surface easement from BNSF pursuant to the Trails Act, the quit claim deed to King County conveyed a surface easement only.  But, King County has repeatedly made false claims and representations of fee ownership.

66.     The Defendants have conspired, pursuant to the Trails Act, and by and through a series of related transactions, including the Memorandum of Understanding and purported easements granted by the Port to PSE and Sound Transit, to commit an unlawful act to accomplish an unlawful purpose, to deprive Plaintiffs of their fee ownership in the abandoned railroad corridor, including their subsurface and aerial rights.

### COUNT III – TRESPASS AGAINST
### KING COUNTY, PSE, SOUND TRANSIT, AND CASCADE

Plaintiffs, for their cause of action against King County, PSE, Sound Transit, and Cascade for Trespass, allege as follows:

Complaint - Page 18

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

67.     Plaintiffs incorporate by reference paragraphs 1-66 as though fully set forth herein.

68.     By and through the operation of the Trails Act, King County acquired the railroad's surface easement which is now authorized to be used for a hiking and biking trail with the possible reactivation of a railroad.

69.     Since the railroad only owned an easement for railroad purposes, Plaintiffs still own the underlying fee in the railroad corridor, including subsurface and aerial rights, and their fee ownership is now burdened with a surface easement for a hiking and biking trail pursuant to the Trails Act.

70.     Defendants PSE, Sound Transit, and Cascade have no ownership interest in the railroad corridor whatsoever adjacent to any of the Plaintiffs' property, including any interest in Plaintiffs' fee ownership of the subsurface and aerial rights in the railroad corridor, the easements purportedly granted by the Port to PSE and Sound Transit are invalid and unenforceable because the Port owned no property interest to convey, and the Memorandum of Understanding is illegal as it relates to Cascade's use of the subsurface of the right-of-way in any fashion because neither the Port or King County could legally grant any rights to Cascade and the Memorandum of Understanding conveys no legal property interest.

71.     Upon information and belief, the Defendants have placed water and sewer pipes, underground cable, underground power lines, overhead power lines, and/or other infrastructure beneath the subsurface or above the surface of Plaintiffs' property in the railroad corridor by affirmative acts.

Complaint - Page 19

4831-9988-4834v.1

72.     Since the Defendants did not own or acquire the Plaintiffs' fee interest in the abandoned railroad corridor, the Defendants have no right or interest in Plaintiffs' subsurface or aerial fee ownership, and the placement of any underground or aerial infrastructure on Plaintiffs' land is an intentional invasion of Plaintiffs fee ownership interest in the exclusive possession of their property.

73.     The Defendants' intentional invasion of Plaintiffs' interest in the exclusive possession of their subsurface and aerial rights in their property is an intentional act of trespass.

74.     It was reasonably foreseeable to all the Defendants that their acts of trespass would disturb Plaintiffs' possessory interest, namely their fee ownership of the right-of-way.

75.     Due to the Defendants' trespass, Plaintiffs have suffered actual and substantial damages, including the invasion of their exclusive right to the subsurface and aerial rights of their property, and are entitled to damages for trespass and continuing trespass, and for attorneys' fees and costs.

### COUNT IV – INVERSE CONDEMNATION AGAINST KING COUNTY, PSE, SOUND TRANSIT, AND CASCADE

Plaintiffs, for their cause of action against King County, PSE, Sound Transit, and Cascade for Inverse Condemnation, allege as follows:

76.     Plaintiffs incorporate by reference paragraphs 1-75 as though fully set forth herein.

77.     The Defendants all have the power of eminent domain granted by the Washington legislature.

78.     By and through the Trails Act, the railroad ceased using the right-of-way for the operation of a railroad, the STB issued a NITU to preserve the railroad corridor, a Trail Use

Complaint - Page 20

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

Agreement was negotiated, signed, and filed with the STB, and King County ultimately acquired the right to use the railroad's surface easement while the surface easement was still railbanked pursuant to the Trails Act.

79.     The Defendants have utilized Plaintiffs' subsurface and aerial rights without paying Plaintiffs and without exercising their condemnation rights.

80.     The Defendants' conduct in utilizing Plaintiffs' subsurface and aerial rights for their own purposes and in selling Plaintiffs' subsurface and aerial rights to other utilities amounts to a taking of Plaintiffs' property interest in their subsurface and aerial rights for those utilities and uses that currently exist on Plaintiffs' land.

81.     The taking of Plaintiffs' subsurface and aerial rights is for a public purpose as authorized by the Washington legislature such that Plaintiffs' subsurface and aerial rights can only be taken by the proper exercise of eminent domain powers and payment to Plaintiffs, but Defendants have taken Plaintiffs' private property for a public use without just compensation being paid by any of the Defendants having instituted any formal proceedings.

82.     As a direct and proximate result of the Defendants' taking of Plaintiffs' subsurface and aerial rights, Plaintiffs are entitled to damages for the inverse condemnation of their land, compensation for the value of subsurface and aerial rights that have already been taken and sold, prejudgment interest, and for attorneys' fees and costs.

### <u>COUNT V – SLANDER OF TITLE AGAINST ALL DEFENDANTS</u>

Plaintiffs, for their cause of action for Slander of Title against all Defendants, allege as follows:

Complaint - Page 21

4831-9988-4834v.1

83.     Plaintiffs incorporate by reference paragraphs 1-82 as though fully set forth herein.

84.     Plaintiffs own the fee title adjacent to the abandoned railroad corridor and the fee title in the railroad corridor, both subsurface and aerial rights.

85.     The Defendants have acted as if, through both written and verbal statements, that they own the underlying fee in the railroad corridor, including subsurface and aerial rights.

86.     By and through a series of agreements and other written documents, including the Purchase and Sale Agreement, the Memorandum of Understanding, and easements purportedly granted to PSE and Sound Transit, the Defendants have repeatedly stated and acted as if they acquired Plaintiffs' fee ownership in the railroad corridor and that they could utilize the subsurface and aerial rights of Plaintiffs' fee ownership in the railroad corridor for utility and other purposes.

87.     The written documents from all Defendants and their various false statements claiming fee ownership have slandered Plaintiffs' actual fee ownership in the right-of-way and have thereby diminished the value of Plaintiffs' fee ownership in their property.

88.     Statements made by King County that they own fee title to the railroad corridor and can use it for any purpose that they want, the granting of easements to Sound Transit and PSE without consent or authority, and Sound Transit's proposed public transportation system have diminished the value of Plaintiffs' fee ownership in their property.

89.     The Defendants' statements and actions purportedly demonstrating fee ownership have slandered plaintiffs' title in the railroad corridor, including subsurface and aerial rights, and

Complaint - Page 22

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

has diminished the value of Plaintiffs' fee ownership in the railroad corridor and reduced the value of the property for resale.

90.     Plaintiffs are entitled to damages from all Defendants based on slander of title due to the Defendants' false statements that have repeatedly been maliciously published and which have defected or diminished Plaintiffs' title resulting in their pecuniary loss.

## COUNT VI – UNJUST ENRICHMENT AGAINST THE PORT

Plaintiffs, for their cause of action against the Port for Unjust Enrichment, allege as follows:

91.     Plaintiffs incorporate by reference paragraphs 1-90 as though fully set forth herein.

92.     Plaintiffs are the fee owners in the railroad corridor, including subsurface and aerial rights, and their property is currently burdened with a surface easement for a hiking and biking trail pursuant to the Trails Act.

93.     The Port acquired a surface easement by and through the Trails Act and transferred that easement to King County for a hiking and biking trail pursuant to the Trails Act.

94.     The Port never acquired fee ownership of any kind or character in Plaintiffs' property but acted as if they did and granted illegal easement rights to PSE and Sound Transit and entered into agreements with King County and Cascade purportedly allowing them to utilize Plaintiffs' fee ownership in the subsurface and aerial rights for utility and other purposes.

95.     The Port has illegally and with no authority whatsoever entered into "easement agreements" and have granted easement rights to the other Defendants without consent or authorization from the Plaintiffs.

Complaint - Page 23

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

96.     The Port has received a benefit to the detriment of the Plaintiffs, namely payment for easement rights and other rights in Plaintiffs' subsurface and aerial rights, and has realized a monetary benefit for the utilization of the subsurface and sale of aerial rights of the Plaintiffs' property without payment to the Plaintiffs.

97.     The Port has realized a monetary benefit by utilizing Plaintiffs' subsurface and aerial rights on Plaintiffs' property without paying for it and by receiving compensation from third parties for Plaintiffs' aerial rights and subsurface rights without payment to the Plaintiffs for the use of their property rights.

98.     The Port does not own any title and does not have any permission to use the subsurface or aerial rights over Plaintiffs' land and since the Port has received substantial monetary compensation and benefit without any payment to the Plaintiffs, the retention of the benefit by the Port is unfair, unjust, and inequitable.

99.     Since the Port has realized enormous monetary benefit from the improper use of Plaintiff's subsurface and aerial rights in their property, the Port has been unfairly and unjustly enriched and owes restitution to the Plaintiffs for the use, unauthorized damage, and sale by the Port to third parties of the Plaintiffs subsurface and aerial rights in their property.

100.    Plaintiffs are entitled to damages for the value of the subsurface and aerial rights obtained by the Port for any payments made by any other Defendant to the Port or any other utility or entity.

WHEREFORE, Plaintiffs respectfully request that judgment be entered for Plaintiffs and against the Port, King County, PSE, Sound Transit and Cascade for damages for conspiracy, trespass, inverse condemnation, slander of title, and unjust enrichment, and for such further

Complaint - Page 24

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

4831-9988-4834v.1

1

2

monetary and equitable relief and for allowable costs and attorney fees as the Court may deem just and proper.

3

Date: March 10, 2015.                              BAKER STERCHI COWDEN & RICE, L.L.C.

4

By   /s/ Thomas S. Stewart
       Thomas S. Stewart

5

       Elizabeth McCulley

6

       2400 Pershing Road, Suite 500
       Kansas City, MO 64108

7

       Telephone:     (816) 471-2121
       Facsimile:      (816) 472-0288

8

       stewart@bscr-law.com
       mcculley@bscr-law.com

9

10

       AND

11

       RODGERS DEUTSCH & TURNER, P.L.L.C.
       Daryl A. Deutsch, WSBA No. 11003

12

       Rodgers Deutsch & Turner, P.L.L.C.
       3 Lake Bellevue Dr. Suite 100

13

       Bellevue, WA  98005

14

       Telephone     (425) 455-1110
       Facsimile      (425) 455-1626

15

       daryl@rdtlaw.com

16

       **ATTORNEYS FOR PLAINTIFFS**

17

18

4831-6064-3106, v. 1

19

20

21

22

23

24

25

Complaint - Page 25

4831-9988-4834v.1