The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH A. IOPPOLO *et al.*,

       Plaintiffs,

    v.

PORT OF SEATTLE, a municipal
corporation; PUGET SOUND ENERGY,
INC., a Washington for profit corporation,
KING COUNTY, a political subdivision of
the State of Washington; CENTRAL
PUGET SOUND REGIONAL TRANSIT
AUTHORITY, a municipal corporation; and
CASCADE WATER ALLIANCE, a
municipal corporation,

       Defendants.

No.  2:15-cv-00358-JCC

**PUGET SOUND ENERGY, INC.'S
MOTION TO DISMISS**

**NOTE ON MOTION CALENDAR:**

May 1, 2015

## I.  INTRODUCTION

In 2010, PSE paid over $13.7 million to the Port of Seattle for easements that the Port
warranted could be used for utility purposes through a former railroad corridor on the eastside of
Lake Washington.  In this putative class action, the plaintiffs copy many of the "quiet title"
allegations from *Kaseburg v. Port of Seattle,* No. 2:14-cv-00784-JCC, and contend that PSE's
utility easements acquired from the Port are "invalid and unenforceable."  (Dkt. #18-1 at ¶ 44.)
The plaintiffs, however, do not allege that PSE is actually using the disputed easements.  Rather,
they only allege that "PSE intends to utilize" the disputed easements in the future.  (*Id.* at ¶ 39.)

PSE'S MOTION TO DISMISS (NO. 2:15-CV-00358-JCC) - 1

4841-4392-6819.01

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

A quiet title lawsuit like *Kaseburg* makes sense to clarify the parties' interests in the corridor, but there is no basis for the plaintiffs' sudden decision to file this class action for monetary damages over easements that PSE only "intends to utilize" in the future.  As a result, regardless of how this Court decides *Kaseburg*, the plaintiffs' claims against PSE for conspiracy to defraud, trespass, inverse condemnation and slander of title should be dismissed with prejudice.

## II.  SUMMARY OF GROUNDS FOR DISMISSAL

<u>Conspiracy Claim</u>.  The plaintiffs allege that the defendants conspired to defraud them of their property rights based on the defendants' non-binding Memorandum of Understanding ("MOU") and an easement agreement between the Port and PSE.  Notwithstanding the plaintiffs' conspiracy theory, PSE's expression of interest in acquiring utility rights within the corridor and paying the Port for easements that the Port warranted could be used for utility purposes are entirely consistent with an honest and lawful purpose, and therefore cannot form the basis for a conspiracy claim.  In addition, the plaintiffs must allege facts that would show both the conspiracy and the underlying tort (*i.e.,* fraud).  The plaintiffs, however, do not allege with particularity that they justifiably relied upon any alleged misrepresentation about property rights within the corridor.  Indeed, according to the plaintiffs, "over 100 years of case law from the Washington Supreme Court" leaves no doubt about those property rights.  (Dkt. #18-1 at ¶ 22.) Accordingly, the plaintiffs fail to state a claim for civil conspiracy.

<u>Other Claims</u>.  The plaintiffs assert three other claims against PSE.  Each is based upon nothing more than labels and conclusions, and formulaic recitations of the claims without distinguishing between the defendants.  First, the trespass claim fails because the plaintiffs allege no facts that would show an "actual physical invasion or intrusion" by PSE onto the plaintiffs' properties.  Second, the inverse condemnation claim fails because the plaintiffs allege no facts that would show a "taking" by PSE or any other defendant.  In fact, the plaintiffs effectively allege no "taking" by PSE based on the alleged invalidity of easements that PSE purchased from the Port (which the plaintiffs have sued for unjust enrichment) and the plaintiffs' failure to allege

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

1   that PSE has used the disputed easements.  Third, the slander of title claim fails because the

2   plaintiffs allege no facts that would show PSE (or any other defendant) maliciously published

3   false statements regarding specific sales of the plaintiffs' properties.

4          Even if the complaint somehow states a tort claim against PSE, the plaintiffs run straight

5   into statute of limitations problems.  The MOU was signed over five years ago, and the Port

6   granted the utility easements to PSE over four years ago.  The limitation periods for conspiracy,

7   trespass and slander of title are all three years or shorter.  Accordingly, all of the plaintiffs'

8   claims against PSE should be dismissed with prejudice on the pleadings.

9                            **III.  STATEMENT OF FACTS**

10          BNSF formerly operated a railroad through a 25-mile corridor that runs generally from

11   Renton to Woodinville with a spur through Redmond.  (Dkt. #18-1 at ¶ 22.)  On August 11,

12   2008, BNSF filed a Petition for Exemption to abandon the line with the Surface Transportation

13   Board ("STB").  (*Id.* at ¶ 30.)  On September 18, 2008, King County requested an Issuance of

14   Notice of Interim Trail Use/Railbanking ("NITU") under the federal Trails Act.  (*Id.*)  The STB

15   then issued three NITUs under the Trails Act.  (*Id.* at ¶ 31.)

16          On May 12, 2008, BNSF, the Port of Seattle and King County entered into a Purchase

17   and Sale Agreement under which BNSF sold the "North Rail Line" (defined as that portion of

18   the corridor north of milepost 28.8 in Woodinville to milepost 38.4 in Snohomish County) to the

19   Port.  (Dkt. #18-1 at ¶ 32.)  Also on May 12, 2008, BNSF, the Port and King County entered into

20   a Donation Agreement under which BNSF "donated" the "South Rail Line" (defined as that

21   portion of the corridor south of milepost 23.45 in Woodinville to milepost 5.0 in Renton) to the

22   Port and King County.  (*Id.* at ¶ 33.)

23          On November 5, 2009, the Port, Sound Transit, King County, the City of Redmond,

24   Cascade Water Alliance and PSE signed the MOU (Dkt. #18-1 at ¶ 34; Breitenbucher Decl.

25   Ex. A).  The MOU states that it "is a non-binding document that creates no rights and imposes no

26   obligations on any Party."  (Breitenbucher Decl. Ex. A at 3.)  Paragraph (E) of the non-binding

1   MOU states: "Sound Transit, Redmond, Cascade and PSE have each expressed an interest in

2   participating in the acquisition and preservation of the [corridor] in public ownership for

3   recreational trail use, as well as for use as a public transportation and utility corridor." (*Id.* at 1.)

4       On December 18, 2009, BNSF quitclaimed its interests in the corridor to the Port

5   pursuant to a Purchase and Sale Agreement for the "North Rail Line" and a "Donation

6   Agreement" for the "South Rail Line." (Dkt. #18-1 at ¶ 36.) PSE then entered an Easement

7   Purchase and Sale Agreement with the Port ("Easement Agreement"). (Dkt. #18-1 at ¶ 39;

8   Breitenbucher Decl. Ex. B.) Under the Easement Agreement, PSE paid $13,752,393 to the Port

9   for the "North Rail Line" and "South Rail Line" easements to "place and maintain overhead and

10  underground facilities and equipment" within the corridor. (Dkt. #18-1 at ¶ 39; Breitenbucher

11  Decl. Exs. B-D.) The plaintiffs allege that "PSE intends to utilize the Plaintiffs' subsurface

12  rights and aerial rights in the right-of-way pursuant to PSE's 'Easement Agreements' to place

13  and maintain overhead and underground facilities and equipment." (Dkt. #18-1 at ¶ 39.)

14                          **IV.  ARGUMENT**

15  **A.    Plaintiffs' Conclusory Allegations Fail to State a Claim Against PSE.**

16      To survive a motion to dismiss, a complaint must contain sufficient factual matter,

17  accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

18  556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief

19  will…be a context-specific task that requires the reviewing court to draw on its judicial

20  experience and common sense." *Id.* at 679. The court may consider documents referenced by

21  the complaint without converting a Rule 12(b)(6) motion into one for summary judgment. *See*

22  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).[1]

23

24

---

25  [1] All of the documents attached to the Declaration of James Breitenbucher, dated April 8, 2015 and filed with this
    Motion, are referenced in the plaintiffs' complaint. The Court may also take judicial notice of publicly recorded
26  documents without converting a motion to dismiss into a motion for summary judgment. *Gruendl v. Wells Fargo
    Bank*, No. C11-0447-RSL, 2011 WL 1885386, at *1 (W.D. Wash. May 18, 2011).

PSE'S MOTION TO DISMISS (NO. 2:15-CV-00358-JCC) - 4

4841-4392-6819.01

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, a complaint must contain factual allegations that are sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)). When the allegations fail to state a claim, "this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (citation omitted).

### 1.      Plaintiffs Fail to State a Claim for Conspiracy to Defraud.

To maintain a claim of civil conspiracy under Washington law, a plaintiff must show by "clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wn. App. 332, 350-51, 929 P.2d 448 (1996). "A properly plead[ed] conspiracy 'must set forth with particularity the facts and circumstances constituting the alleged conspiracy.'" *Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1157 (W.D. Wash. 2004) (citation omitted), *aff'd in part, rev'd in part sub nom. Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007). "The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent only with the existence of the conspiracy." *John Davis & Co. v. Cedar Glen No. Four, Inc.*, 75 Wn.2d 214, 224, 450 P.2d 166 (1969).

Here, the plaintiffs allege that the defendants "conspired, pursuant to the Trails Act, and by and through a series of related transactions, including the Memorandum of Understanding and

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

purported easements granted by the Port to PSE and Sound Transit, to commit an unlawful act to accomplish an unlawful purpose, to deprive Plaintiffs of their fee ownership in the abandoned railroad corridor, including their subsurface and aerial rights." (Dkt. #18-1 at ¶ 66.)  In other words, the plaintiffs allege that the defendants conspired to illegally use the Trails Act to defraud the plaintiffs of their property interests.  (Dkt. #18-1 at ¶ 62.)  These allegations, however, are insufficient to state a civil conspiracy claim.

First, the circumstances are completely consistent with a lawful or honest purpose.  The MOU states that it "is a non-binding document that creates no rights and imposes no obligations on any Party." (Breitenbucher Decl. Ex. A at 3.)  Paragraph (E) of the MOU states:  "Sound Transit, Redmond, Cascade and PSE have each expressed an interest in participating in the acquisition and preservation of the [corridor] in public ownership for recreational trail use, as well as for use as a public transportation and utility corridor." (Breitenbucher Decl. Ex. A at 1.)[2] After BNSF quit claimed its interests in the corridor to the Port of Seattle, PSE entered an Easement Agreement with the Port.  (*Id.* Ex. B.)

Under the Easement Agreement, PSE acquired easements to "place and maintain overhead and underground facilities and equipment" within the corridor.  (Dkt. #18-1 at ¶ 39; Breitenbucher Decl. Exs. C & D.)  In paragraph 5.2(ii) of the Easement Agreement, the Port represented and warranted to PSE that "the Port has the necessary right, title and interests in the Property to grant the Easement Rights…." (Breitenbucher Decl. Ex. B at 4.)  In other words, PSE expressed an interest in the corridor for utility purposes; PSE received a warranty from the Port that it had the necessary property interests to convey the utility easements to PSE; and PSE paid the Port for the utility easements that the plaintiffs now say are "invalid and unenforceable." (Dkt. #18-1 at ¶ 44.)  None of these acts are "inconsistent with a lawful or honest purpose and reasonably consistent only with the existence of the conspiracy." *John Davis*, 75 Wn.2d at 224.

---

[2] Paragraph 60 of the complaint quotes from Paragraph (F) of the MOU and misleadingly implies that Paragraph (F) states "the express written purpose" of all defendants.  (Dkt. #18-1 at ¶ 60.)  PSE is not even mentioned in Paragraph (F) of the MOU.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

Second, civil conspiracy is not, by itself, an actionable claim. *See W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 439, 438 P.2d 867 (1968) ("The mere agreement to do a wrongful act can never alone amount to a tort[.]").  Rather, civil conspiracy requires a plaintiff to prove an underlying actionable claim that was accomplished by the conspiracy. *See id.*; *see also Northwest Laborers–Employers Health & Sec. Trust Fund v. Phillip Morris, Inc.*, 58 F. Supp. 2d 1211, 1215 (W.D. Wash. 1999).

Here, the plaintiffs allege that the defendants conspired to illegally use the Trails Act to defraud the plaintiffs of their property interests.  (Dkt. #18-1 at ¶¶ 6, 62.)  "To maintain a claim for fraud under Washington law, Plaintiff must show that he 'justifiably relied on the defendant's misrepresentations.'"  *Schweickert v. Hunts Point Ventures,* No. 13-cv-675-RSM, 2014 WL 6886630, at \*7 (W.D. Wash. Dec. 4, 2014).  The plaintiffs, however, do not allege that they justifiably relied upon any misrepresentation by any defendant.  *See Swartz*, 476 F.3d at 766 ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraud.").  To the contrary, they allege that "over 100 years of case law from the Washington Supreme Court" leaves no doubt that the easements held by BNSF were "for railroad purposes only."  (Dkt. #18-1 at ¶ 22.)  Accordingly, the plaintiffs' conspiracy to defraud claim fails for the independent reason that the plaintiffs have not pled an actionable underlying tort.

### 2. Plaintiffs Allege No Facts that Would Show PSE is Liable for Trespass.

"In order to establish the tort of trespass, the plaintiff must demonstrate an actual physical invasion or intrusion onto the property of another."  *Putz v. Golden*, No. C10-0741-JLR, 2012 WL 2565017, at \*19 (W.D. Wash. July 2, 2012) (citing *Borden v. City of Olympia*, 113 Wn. App. 359, 373, 53 P.3d 1020 (2002)).  The plaintiff must also show "actual and substantial damages." *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 692-93, 709 P.2d 782 (1985).

The plaintiffs do not allege any facts that would show PSE has physically invaded or intruded onto their properties, or that PSE damaged any of their properties.  In fact, the plaintiffs specifically allege that PSE merely "intends to utilize the Plaintiffs' subsurface rights and aerial

1    rights in the right-of-way pursuant to PSE's 'Easement Agreements' to place and maintain

2    overhead and underground facilities and equipment."  (Dkt. #18-1 at ¶ 39.)

3            Paragraph 71 of the complaint alleges in conclusory fashion "upon information and

4    belief" that "Defendants have placed water and sewer pipes, underground cable, underground

5    power lines, overhead power lines, and/or other infrastructure beneath the subsurface or above

6    the surface of Plaintiffs' property in the railroad corridor by affirmative acts."  (Dkt. #18-1 at

7    ¶ 71.)  But such threadbare allegations are exactly the type that the U.S. Supreme Court says are

8    insufficient to survive a motion to dismiss.  At a minimum, the plaintiffs must plead "factual

9    content that allows the court to draw the reasonable inference" that PSE is liable to the plaintiffs

10   for trespass.  *See Iqbal,* 556 U.S. at 678.  The plaintiffs have failed to meet this burden, and their

11   trespass claim against PSE should be dismissed on the pleadings.  *See Blantz v. Cal. Dep't of*

12   *Corrections*, 727 F.3d 917, 927 (9th Cir. 2013) ("A complaint will not survive a motion to

13   dismiss if it 'tenders naked assertions devoid of further factual enhancement.'") (quoting *Iqbal*,

14   556 U.S. at 678).

15           **3.     Plaintiffs Allege No Facts that Would Show a "Taking" by PSE.**

16           Next, the plaintiffs assert a claim against PSE for inverse condemnation.  "The term

17   'inverse condemnation' is used to describe an action alleging a governmental 'taking' or

18   'damaging' that is brought to recover the value of property which has been *appropriated in fact*,

19   but with no formal exercise of the power of eminent domain."  *Dickgieser v. State*, 153 Wn.2d

20   530, 534-35, 105 P.3d 26 (2005)(emphasis added).  An inverse condemnation plaintiff must

21   prove a "taking" greater than "'a mere tortious interference.'"  *Gaines v. Pierce County*, 66 Wn.

22   App. 715, 725, 834 P.2d 631 (1992) (quoting *Northern Pac. Ry. v. Sunnyside Valley Irrigation*

23   *Dist.*, 85 Wn.2d 920, 924, 540 P.2d 1387 (1975)).  "A taking does not exist unless an invasion

24   causes damage properly characterized as permanent, or recurring, or chronic and unreasonable."

25   *Citoli v. City of Seattle*, 115 Wn. App. 459, 488, 61 P.3d 1165 (2002).

26           In *Haggart v. United States,* 116 Fed. Cl. 131 (2014), landowners with properties

PSE'S MOTION TO DISMISS (NO. 2:15-CV-00358-JCC) - 8

4841-4392-6819.01

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1   adjacent to the same former BNSF railroad corridor—including the named plaintiffs in this

2   case—obtained a judgment of more than $141 million based on the federal government's taking

3   of their reversionary interests when the corridor was railbanked.  *See id.* at 149.  In that case, the

4   plaintiffs agreed that the government had the legal right under the Trails Act to prevent the

5   abandonment of the railroad and create an easement for recreational trail use.  *See Haggart v.*

6   *United States,* 108 Fed. Cl. 70, 76 (2012).  In other words, the landowners maintained that the

7   property had been "appropriated in fact" by the federal government.  (Dkt. #18-1 at ¶ 57.)

8        By contrast, the same plaintiffs with the same counsel in this case claim that PSE did not

9   obtain valid utility easements from the Port while conceding that PSE has not actually used the

10  disputed easements.  In other words, the plaintiffs actually allege that *there has been no "taking"*

11  *by PSE* but somehow seem to think that they should be compensated by PSE under an inverse

12  condemnation theory.  This claim makes no sense.  Accordingly, the plaintiffs have not pled a

13  plausible claim against PSE for inverse condemnation, and it should be dismissed.

14       **4.      Plaintiffs Allege No Facts that Would Show Slander of Title By PSE.**

15       Finally, the plaintiffs assert a claim against PSE for slander of title.  "The necessary

16  elements of a slander of title action are that the words:  (1) must be false; (2) must be maliciously

17  published; (3) must be spoken with reference to some pending sale or purchase of the property;

18  (4) must result in a pecuniary loss or injury to the plaintiff; and (5) must be such as to defeat the

19  plaintiff's title."  *Pay 'N Save Corp. v. Eads,* 53 Wn. App. 443, 448, 767 P.2d 592 (1989) (citing

20  *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375, 617 P.2d 704 (1980)).

21       Yet again, the plaintiffs offer conclusory allegations that formulaically recite the elements

22  of the claim.  For example, the plaintiffs allege that the defendants' "statements and actions

23  purportedly demonstrating fee ownership have slandered plaintiffs' title in the railroad

24  corridor…."  (Dkt. #18-1 at ¶ 89.)  The plaintiffs, however, allege no facts that would show that

25  PSE ever claimed fee ownership to the detriment of the plaintiffs.  Indeed, the remainder of the

26  complaint alleges that PSE merely claims utility easement rights over the plaintiffs' properties.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

1    Nor have the plaintiffs alleged any fact that would show that PSE published such

2    statements maliciously.  To the contrary, section 5.2(ii) of the Easement Agreement confirms

3    that PSE received a warranty from the Port that the Port had the necessary rights to grant PSE the

4    utility easements through the corridor.  (Breitenbucher Decl. Ex. B at 4.)

5    Regardless, "[s]lander of title is only available where the defendant has interfered with

6    the plaintiff's sale of the property."  *Lapinski v. Bank of Am.,* C13–00925-RSM, 2014 WL

7    347274, at *5 (W.D. Wash. Jan. 30, 2014) (citing *Pay'N Save*, 53 Wn. App. at 448).  The

8    plaintiffs here do not allege that any of the defendants made statements "with reference to some

9    pending sale or purchase of the property" or that resulted "in a pecuniary loss or injury to the

10    plaintiff."  *Pay 'N Save,* 53 Wn. App. at 448 (affirming trial court's dismissal of a slander of title

11    claim where plaintiff conceded that no sale or purchase of the property was pending); *see also*

12    *Teegarden v. MERS, Inc.*, No. C14-5731-BHS, 2014 WL 7213189, at *4 (same); *Lapinski* 2014

13    WL 347274, at *5 (same).  The plaintiffs cannot hide behind an "unadorned, the defendant-

14    unlawfully-harmed-me accusation" to avoid dismissal on the pleadings.  *Iqbal*, 556 U.S. at 678.

**B.     Plaintiffs' Tort Claims Are Also Time Barred.**

16    According to the plaintiffs' allegations, the alleged "civil conspiracy" began no later than

17    when the MOU was signed on November 5, 2009.  This was more than five years before the

18    plaintiffs filed their complaint on March 10, 2015.  The Port and PSE entered the Easement

19    Agreement on December 20, 2010, which is still more than four years before the plaintiffs filed

20    their complaint.

21    The statute of limitations for conspiracy to defraud is three years.  *See Avalo v. Regional*

22    *Trustee Servs. Corp.*, No. C12-5745-RBL, 2013 WL 526404, at *3 (W.D. Wash. Feb. 11, 2013)

23    (dismissing conspiracy to defraud claim under Rule 12(b)(6) as time barred under three-year

24    limitations period in RCW4.16.080(4)).  The statute of limitations for trespass is three years.  *See*

25    *Bradley*, 104 Wn.2d at 693.  The statute of limitations for slander of title is no longer than three

26    years.  *See Pruss v. Bank of Am.*, No. C13-1447-MJP, 2013 WL 5913431, at *4 (W.D. Wash.

Nov. 1, 2013) (dismissing slander of title claim under Rule 12(b)(6) as time barred under three-year limitations period in RCW 4.16.080).  Accordingly, even if the plaintiffs could otherwise state plausible claims against PSE for civil conspiracy, trespass or slander of title, those tort claims are time barred.

## V.  CONCLUSION

A quiet title lawsuit like *Kaseburg* makes sense to clarify the parties' disputed interests in the railbanked corridor, but the plaintiffs' current efforts to seek monetary damages from PSE do not.  The plaintiffs allege that PSE did not acquire valid easements from the Port, and that PSE merely "intends to utilize" the disputed easements in the future.  Under the circumstances, the plaintiffs have not—and cannot—plead the necessary factual content required to state a plausible claim against PSE for civil conspiracy, trespass, inverse condemnation or slander of title.  And even if they could, the plaintiffs run straight into statute of limitations problems.  Accordingly, the plaintiffs' complaint against PSE should be dismissed with prejudice under Rule 12(b)(6).

DATED this 8th day of April, 2015.

RIDDELL WILLIAMS P.S.


By   s/ James Breitenbucher
     James Breitenbucher, WSBA #27670
     Blake Marks-Dias, WSBA #28169

     1001 Fourth Avenue, Suite 4500
     Seattle, Washington 98154-1192
     Telephone:  (206) 624-3600
     Facsimile:  (206) 389-1708
     Email: jbreitenbucher@riddellwilliams.com
            bmarksdias@riddellwilliams.com

Attorneys for Defendant Puget Sound Energy, Inc.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2015, I electronically field the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Thomas S. Stewart – stewart@bscr-law.com
- Elizabeth G. McCulley – mcculley@bscr-law.com
- Daryl A. Deutsch - daryl@rdtlaw.com
- Timothy G. Leyh – timl@calfoharrigan.com
- Randall Thomsen – randallt@calfoharrigan.com
- Kristin Ballinger - kristinb@calfoharrigan.com
- David J. Hackett – david.hackett@kingcounty.gov
- H. Kevin Wright – kevin.wright@kingcounty.gov
- Peter G. Ramels – pete.ramels@kingcounty.gov
- Andrew W. Marcuse – andrew.marcuse@kingcounty.gov
- Desmond L. Brown – desmond.brown@soundtransit.org
- Loren Armstrong – loren.armstrong@soundtransit.org
- Dale Johnson – dnj@vnf.com

DATED this 8th day of April, 2015.

__s/ James Breitenbucher_____
James Breitenbucher

PSE'S MOTION TO DISMISS (NO. 2:15-CV-00358-JCC) - 12

4841-4392-6819.01

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600