THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  JOSEPH A. IOPPOLO, *et al.,*                CASE NO. C15-0358-JCC

10                                             ORDER GRANTING MOTIONS TO
                              Plaintiffs,      DISMISS
11
              v.
12
    PORT OF SEATTLE, *et al.,*
13
                              Defendants.
14

15        These matters come before the Court on Defendants King County's, the Port of Seattle's,

16 and Sound Transit's Joint Motion to Dismiss Tort Claims (Dkt. No. 23) and Defendant Puget

17 Sound Energy's Motion to Dismiss (Dkt. No. 29).  Having thoroughly considered the parties'

18 briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS

19 both Defendants King County's, the Port of Seattle's, and Sound Transit's Joint Motion to

20 Dismiss Tort Claims (Dkt. No. 23) and Defendant Puget Sound Energy's Motion to Dismiss

21 (Dkt. No. 29).

22    **I.      BACKGROUND**

23        This case is a putative class action seeking money damages for Defendants' allegedly

24 tortious usurpation of Plaintiffs' property.  The facts underlying this case have been thoroughly

25 detailed in orders pertaining to a related case before this Court, namely, *Kaseburg, et al. v. Port*

26 *of Seattle, et al.,* C14-0784-JCC, in which many of the instant Plaintiffs seek to quiet title and to

obtain declaratory relief with regard to the same property and against most of the same Defendants.  (*See e.g.,* Order Denying Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 91.)  These cases arise out of the railbanking of a former BNSF Railway corridor on the eastern shores of Lake Washington.  (Complaint, Dkt. No. 1 at 8.)  The Port and King County received an interest in the corridor via operation of the Trails Act.  (*Id.* at ¶38.)  Plaintiffs maintain that it is an interest solely in a surface easement for a hiking and biking trail "with the possible reactivation of a railroad."  (*Id.*)    In both the instant case and in *Kaseburg,* Plaintiffs claim that Defendants have unlawfully expanded the scope of this interest.  (*Id.*)

Specifically, Plaintiffs allege that

> The Port, through Quit Claim Deed from BNSF, and pursuant to the Trails Act, acquired BNSF's easement over the surface of the [railroad corridor], which pursuant to the Trails Act, is now an easement for a hiking and biking trail with the possible reactivation of a railroad.  The Port, then, pursuant to agreements with King County, assigned some of the surface rights in the railroad corridor to King County and then improperly and illegally attempted to usurp the landowners' fee interests in the aerial rights and improperly and illegally retained all rights to negotiate agreements with other utilities for the use of the right-of-way, including subsurface and aerial rights, which the Port had no rights to, and claimed all revenues derived from any such agreements.

(*Id.*)

Further, Plaintiffs object to what they allege was the unlawful transfer of the Port's interest to a handful of utility companies.  For instance, "the Port granted nonexclusive perpetual easements to PSE over, under, along, across and through the former railroad right-of-way.  The purported easement includes aerial and subsurface rights and PSE intends to utilize the Plaintiffs' subsurface rights and aerial rights in the right-of-way pursuant to PSE's 'Easement Agreements' to place and maintain overhead and underground facilities and equipment."  (*Id.* at ¶ 39.) According to Plaintiffs, "PSE's easement from the Port, to the extent it purportedly grants any rights beyond the surface of Plaintiffs' land for a recreational trail, is invalid and unenforceable." (*Id.* at ¶44.)  Additionally, "the Port also granted a purported perpetual High Capacity

1    Transportation Easement to Sound Transit on April 11, 2012 . . . [which] includes 'the right to

2    own or operate a High Capacity Transit System . . . in, on, under, over, along, across, and

3    through the Property.'" (*Id.* at ¶40.)  According to Plaintiffs, "Sound Transit's easement from

4    the Port is also invalid and unenforceable." (*Id.* at ¶44.)

5        Plaintiffs, on behalf of all landowners who owned land adjacent to the Eastside rail

6    corridor, bring this putative class action against several state and municipal entities (hereinafter

7    "Governmental Defendants," namely the Port of Seattle, King County, Central Puget Sound

8    Regional Transit Authority (Sound Transit), and Cascade Water Alliance, and also against a for-

9    profit, private corporation, Puget Sound Energy, Inc. (*Id.* at 5.)  Plaintiffs bring several tort-

10   based claims: Conspiracy to Illegally Utilize the Trails Act to Defraud Plaintiffs of their Property

11   Rights (against all Defendants); Trespass (against King County, Puget Sound Energy, Sound

12   Transit, and Cascade); Inverse Condemnation (against King County, Puget Sound Energy, Sound

13   Transit, and Cascade); Slander of Title (against all Defendants); and Unjust Enrichment (against

14   the Port). (*Id.* at 16-23.)

15       Before the Court today is three of the four Governmental Defendants' Motion to Dismiss

16   for failure to comply with state notice of tort claims requirements (Dkt. No. 23) and Puget Sound

17   Energy's Motion to Dismiss (Dkt. No. 29).

18   **II.  King County's, Port's, and Sound Transit's Joint Motion to Dismiss**

19       **A.  Legal Standard**

20       Washington's tort claims statute provides that any plaintiff seeking "damages against . . .

21   local government entities" must present the claim to an agent appointed by the government

22   defendant *prior* to filing suit.  RCW 4.96.020(2).[1]  Under RCW 4.96.020, plaintiffs are barred

23

24   _____

25   [1] "The governing body of each local governmental entity shall appoint an agent to receive any
26   claim for damages made under this chapter. The identity of the agent and the address where he or
     she may be reached during the normal business hours of the local governmental entity are public

from filing a suit in court against a local government entity until at least sixty days after the

claim has been presented to the designated agent of that entity.  RCW 4.96.020(3)(f)(4).[2]  This

statute is to be liberally construed and substantial compliance is permitted.  *See* RCW

4.96.020(5) ("With respect to the content of claims under this section and **all** procedural

requirements in this section, this section must be liberally construed so that substantial

compliance will be deemed satisfactory.") (emphasis added).[3]

However, "[n]oncomplaince with the statute is not substantial compliance."  *Corona v.*

*Boeing Co.,* 111 Wash. App. 1, 8 (2002).  Washington's notice of tort claims statute "*forbids* the

commencement of a tort action 'until sixty days have elapsed after' the filing of the notice of

claim with the 'local government entity.'"  *Troxell v. Ranier Public School District No. 307,* 154

---

records and shall be recorded with the auditor of the county in which the entity is located. **All
claims for damages against a local governmental entity, or against any local governmental
entity's officers, employees, or volunteers, acting in such capacity, shall be presented to the
agent within the applicable period of limitations within which an action must be
commenced.** A claim is deemed presented when the claim form is delivered in person or is
received by the agent by regular mail, registered mail, or certified mail, with return receipt
requested, to the agent or other person designated to accept delivery at the agent's office. The
failure of a local governmental entity to comply with the requirements of this section precludes
that local governmental entity from raising a defense under this chapter."  Wash. Rev. Code Ann.
§ 4.96.020 (West).

[2] "No action subject to the claim filing requirements of this section shall be commenced against
any local governmental entity, or against any local governmental entity's officers, employees, or
volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty
calendar days have elapsed after the claim has first been presented to the agent of the governing
body thereof."  Wash. Rev. Code Ann. § 4.96.020 (West).

[3] Substantial compliance extends to the presentment requirements following the 2009 legislative
amendments.  *Bell v. City of Tukwila,* No. C10-0379-TSZ, 2011 WL 1045586, at *1 (W.D.
Wash., Mar. 21, 2011) (Judge Thomas S. Zilly presiding) ("The relevant statute now provides
that '[w]ith respect to the content of claims under this section *and all procedural requirements in
this section*, this section must be liberally construed so that substantial compliance will be
deemed satisfactory.' . . . . Thus, although the case law prior to 2009 differentiated between
content and procedure (presentment), requiring strict compliance as to the latter, the current
statute makes no such distinction and prescribes a substantial compliance standard for both
content and procedure.").

Wash. 2d 345, 350-51 (2005) (emphasis added).  Substantial compliance with RCW 4.96.020 is a "condition precedent to the commencement of any action claiming damages."  RCW 4.96.010(1).

### B.  Discussion

King County, the Port, and Sound Transit (the moving Governmental Defendants) are "local government entities" within the meaning of this statute.  *See* RCW 4.96.010(2) (including municipal corporations and counties in the definition of local government entity); RCW 39.50.010(3) (indicating that port districts and regional transit authorities are municipal corporations).

Plaintiffs' claims against King County, the Port, and Sound Transit seek "damages arising out of their tortious conduct."  Conspiracy to defraud, trespass, slander of title, and unjust enrichment[4] all sound in tort and are therefore subject to RCW 4.96.020.[5]

However, Plaintiffs failed to give notice of their claims to King County, the Port, or Sound Transit before bringing this action.  Declarations from the County's, Port's, and Sound

---

[4] Plaintiffs' unjust enrichment claim is essentially a conversion claim – that the Port never acquired fee ownership of Plaintiffs' property, and so acted unlawfully in granting easement rights to the utility companies.  (*See* Complaint, Dkt. No. 1 at ¶94.)

[5] *See Kietz v. Gold Point Mines,* 5 Wash. 2d 224, 233 (1940) ("Where a conspiracy results in the commission of a wrong, the cause of action sounds in tort and not in contract, though the acts constituting the wrong may affect contractual relationships."); *Bradley v. American Smelting and Refining Co.,* 104 Wash. 2d 677, 681 (1985) (recognizing trespass as an intentional tort); *Rorvig v. Douglas,* 123 Wash. 2d 854, 862-63 (1994) (recognizing slander of title as a general tort); *Blusal Meats, Inc. v. United States,* 638 F. Supp. 824, 832 (S.D.N.Y., 1986) (holding that because the underlying "factual basis for the government's [unjust enrichment] claims is that defendant knowingly and purposefully presented false documents to obtain money," (a tort), the overlying unjust enrichment claim sounds in tort also); *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.,* 737 F. Supp. 1272, 1285 (W.D.N.Y., 1990) (holding that because "the gravamen of that [unjust enrichment] claim centers on National Fuel's alleged 'intentional and/or negligent acts [torts],' . . . [the unjust enrichment claim] thus sounds in tort").

Transit's respective agents contain averments that no claims were presented prior to the

commencement of the suit.  (Declaration of Anne Norris, Dkt. No. 25 at ¶8 (King County);

Declaration of Jeff Hollingsworth, Dkt. No. 24 at ¶6 (Port); Declaration of Sarah Kern, Dkt. No.

27 at ¶5 (Port); Declaration of Vianney Muse, Dkt. No. 26 at ¶5 (Port); Declaration of Kathryn

Flores, Dkt. No. 28 at ¶7 (Sound Transit).)

Plaintiffs do not deny that they failed to follow any of RCW 4.96.020's requirements, and

explicitly admit to failing to "file formal claims with any of the municipal entities prior to filing

this lawsuit."  (Plaintiffs' Response, Dkt. No. 33 at 2.)

In defense of this failure, Plaintiffs argue that compliance with RCW 4.96.020 would be

useless because this is a class action, because Defendants failed to comply with sundry technical

aspects of RCW 4.96.020, because Defendants have not shown that they acted within the scope

of their authority in allegedly committing the torts, and because unjust enrichment is not a tort.

These arguments are unavailing.

First, RCW 4.96.020 applies to "all claims" and provides no exceptions to compliance

when the contemplated action is a class action, when the plaintiffs feel that their claims are

especially complex, or when plaintiffs opine that application of the law would be "a useless

exercise."  RCW 4.96.020(3).  (*See* Plaintiffs' Amended Response, Dkt. No. 34 at 2-3.)

Second, unlike Plaintiffs, Defendants, at minimum, *substantially* complied[6] with RCW

4.96.020's requirements by filing, with the county auditor, the identity[7] of the agent and address

---

[6] Again, the current version of RCW 4.96.020 states that with respect to "**all** procedural
requirements in this section, this section must be liberally construed so that substantial
compliance will be deemed satisfactory."  RCW 4.96.020(5) (emphasis added).  Section 5 does
*not* make substantial compliance available to claimants only/deny this to the government.

ORDER GRANTING MOTIONS TO DISMISS

1    at which he may be reached[8] – the only requirements that can be reasonably derived from RCW

2    4.96.020(2).  *See* RCW 4.96.020(2).

3         Third, the "acting in such capacity" limitation applies to "officers, employees, or

4    volunteers," not to the local government entity itself.  RCW 4.96.020(1) & (4).

5         Fourth, while an unjust enrichment claim may also be brought in a contract or quasi-

6    contract action, this *remedy* is not exclusive to that field.  As the Seventh Circuit has explained,

7    "[u]njust enrichment is a common-law theory of *recovery* or restitution that arises when the

8    defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust.  What

9    makes the retention of the benefit unjust is often due to some improper conduct by the defendant.

10   And usually this improper conduct will form the basis of another claim against the defendant in

11

12   _____

13   [7] RCW 4.96.020(2) carries no requirement that this agent identification be *by name* – the
     required information is merely the "identity" of the agent, which could be construed as to allow
14   for identification by title/ job position alone.  Section 3(c) of the statute does mention the "name"
     of the agent, but this is *not* in reference to what the local government entity must file with the
15   auditor, (the basis of Plaintiffs' objection) but rather in reference to instructions that must
     accompany the standard tort claim form.  Further, if the requirement regarding identity is still
16   ambiguous, that requirement must be construed in favor of the Governmental Defendants given
     Section 5's caveat that "with respect to . . . ***all*** procedural requirements in this section, this
17   section must be liberally construed so that substantial compliance will be deemed satisfactory."
     Thus, the Court is persuaded that all moving Governmental Defendants (including Sound
18   Transit) have *substantially* complied with RCW 4.96.020.  Further, the case emphasized by
     Plaintiffs, *Estate of Connelly*, 145 Wash. App. 941 (2008), *preceded* the 2009 amendment
19   permitting substantial compliance (Section 5), and also does not unambiguously state that
     "identity" implies the *personal name* of the agent – indeed the *Connelly* court's analysis suggests
20   that specifying the agent's *position* is sufficient. *See id.* at 947.  In *Estate of Connelly*, the
     government agency had failed to even *appoint* an agent (and thus, had failed to specify even the
21   title of the person appointed as agent).
     [8] RCW 4.96.020(2) provides that the government agency must *file with the auditor* "[t]he
22   identity of the agent and the address where he or she may be reached *during* the normal business
     hours" of the agency.  RCW 4.96.020(2) (emphasis added).  Section (3)(c) requires the
23   government agency to specify the normal business hours of the government agency *on the tort*
24   *claim form*.   The Port's notice of claim form specifies the business hours of the Port (*see*
     Declaration of Kristin Ballinger, Dkt. No. 38, Ex. A); recording the business hours with the
25   auditor is not mandated by RCW 4.96.020.
26

tort, contract, or statute." *Cleary v. Philip Morris, Inc.,* 656 F.3d 511, 517 (7th Cir. 2011).[9]
Here, the alleged improper conduct was tortious – conversion.  *See* notes 4 &5, *surpa.*

Plaintiffs' failure to substantially comply with the requirements of RCW 4.96.020 justifies dismissal of the tort claims against the moving Governmental Defendants.  There is substantial precedent for doing so in both this state and in this federal district.  *See Holland v. King County Adult Detention,* 2013 WL 5652505 at *7 (W.D. Wash., Oct. 15, 2013) (Judge James L. Robart presiding) (holding that "as to any asserted state law tort claims against King County Defendants, Mr. Holland's failure to file a notice of claim with King County's designated agent pursuant to RCW 4.92.020 requires the court to dismiss those claims.  Accordingly, the court grants King County Defendants' motion for summary judgment with respect to Mr. Holland's state law tort claims").  *See also White v. Shaffer,* 2014 WL 1116735 at *2 (W.D. Wash., Mar. 20, 2014) ("Washington's claim-filing statute, RCW 4.96.020, requires at the very least substantial compliance with its pre-claim notice procedures.  Plaintiff does not claim that he followed these procedures, or that he was somehow prevented from doing so.  He did not, and his negligence claim against Pierce County is facially deficient.  That claim is DISMISSED.");  *Cronk v. City of West Richland*, 2015 WL 853863 at *4 (E.D. Wash., Feb. 26, 2015) ("The Court finds that Plaintiff was required by RCW 4.96.020 to provide a notice of tort claim to the City Clerk . . . .  Plaintiff undisputedly did not provide the required notice, and Defendants are not

---

[9]  *See also* the Third Restatement of Restitution and Unjust Enrichment, § 5, Topic 1 ("Because restitution is concerned only with profitable wrongs, the violations that may serve as the basis of a claim to recover unjust enrichment consists for the most part of wrongful interference with rights to property (broadly defined).  Property rights are infringed by certain wrongs classified as torts, and by wrongs that are equitable in nature, involving breach of duty imposed by a fiduciary or confidential relation.").

1    estopped from asserting, nor have they waived, RCW 4.96.020's notice requirement as a defense.

2    Accordingly, . . . Defendants' Motion for Partial Summary Judgment . . . is GRANTED.").

3         Thus, Plaintiffs' civil conspiracy, trespass, slander of title, and unjust enrichment claims

4    against King County, the Port of Seattle, and Sound Transit are hereby DISMISSED and these

5    Defendants' Joint Motion to Dismiss (Dkt. No. 23) is hereby GRANTED.

6

7    **III.   Puget Sound Energy's Motion to Dismiss**

8         **A. Legal Standard**

9

10        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal

11   when the opposing party "fail[s] to state a claim upon which relief can be granted."  To grant a

12   motion to dismiss, the court must conclude that the moving party is entitled to judgment as a

13   matter of law, even after accepting all factual allegations in the complaint as true and construing

14   them in the light most favorable to the nonmoving party.  *Fleming v. Pickard*, 581 F.3d 922, 925

15   (9th Cir. 2009).[10]  There must be no genuine issues of material fact in dispute.  *Id.*

16        However, to survive a motion to dismiss, a plaintiff must cite facts that, if accepted as

17   true, support a "plausible" cause of action.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-

18   56 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

19   the court to draw the reasonable inference that the defendant is liable for the misconduct

20   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a

21   cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In short, the

22   factual allegations in a complaint must "raise a right to relief above the speculative level."

23   *Twombly*, 550 U.S. at 555 (2007).

24        "Determining whether a complaint states a plausible claim for relief . . . [is] a context-

25   [10] "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c)

26   analog." *Dworkin v. Hustler Magazine, Inc.,* 867 F. 2d 1188, 1192 (9th Cir. 1989).

ORDER GRANTING MOTIONS TO DISMISS
PAGE - 9

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  In reviewing motions to dismiss, courts may consider documents referenced by the complaint without converting the motion into one for summary judgment.  *See Van Buskirk v. Cable News Network*, *Inc.,* 284 F.3d 977, 980 (9th Cir. 2002).

### B.  Discussion

Defendant Puget Sound Energy, Inc. (PSE) has brought its own[11] Motion to Dismiss on Federal Rule of Civil Procedure 12(b)(6) grounds.  (Dkt. No. 29.)  In this Motion, PSE argues for the dismissal of Plaintiffs' claims of conspiracy, trespass, inverse condemnation, and slander of title.  (*Id.* at 2.)

### 1.  *Conspiracy Claim*

In Count II of the Complaint, Plaintiffs allege that all Defendants, including PSE, conspired to "secure property rights in the abandoned railroad corridor in support of . . . utility uses, ostensibly utilizing and relying on the Trails Act to announce and profess 'acquired' property rights in the railroad corridor that the Trails Act and state law did not allow." (Complaint, Dkt. No. 1 at ¶59.)

To demonstrate a claim for civil conspiracy under Washington law, the claimant must demonstrate with "clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy."  *Wilson v. State,* 84 Wash. App. 332, 350-51 (1996).  "A properly pled conspiracy

---

[11]  As a private entity, PSE did not join in the Governmental Defendants' Motion to Dismiss on RCW 4.96.020 grounds.

'must set forth with particularity the facts and circumstances constituting the alleged conspiracy.'" *Swartz v. KPMG, LLC,* 401 F. Supp. 2d 1146, 1157 (W.D. Wash., 2004).

Civil conspiracy is not, by itself, an actionable claim.  "The mere agreement to do a wrongful act can never alone amount to a tort." *W.G. Platts, Inc. v. Platts*, 73 Wash. 2d 434, 439 (1968).  Thus, a claim for civil conspiracy necessitates the successful pleading of an underlying actionable tort or other illegal act.  *See id.  See also Northwest Laborers-Employers Health and Security Trust Fund v. Phillip Morris, Inc.,* 58 F. Supp. 2d 1211, 1216 (W.D. Wash., 1999).

Plaintiffs claim that PSE conspired with the other Defendants to use the Trails Act to "defraud" the Plaintiffs of their property interests.  (Complaint, Dkt. No. 1 at ¶6; p. 16; ¶62.)  As fraud is the underlying illegal act alleged by Plaintiffs, Plaintiffs must successfully plead a claim for fraud if they are to successfully plead a claim for civil conspiracy.  *See W.G. Platts*, 73 Wash. 2d at 439.  "Rule 9(b) imposes heightened pleading requirements where 'the object of the conspiracy is fraud[].'" *Swartz*, 476 F.3d at 765.  Plaintiffs do not meet these heightened requirements.

For instance, "[t]o maintain a claim for fraud under Washington law, Plaintiff must show that he 'justifiably relied on the defendant's misrepresentations.'" *Schweikert v. Hunts Point Ventures, Inc.,* 2014 WL 6886630 at *7 (W.D. Wash., Dec. 4, 2014).  However, Plaintiffs have not alleged that they justifiably relied on any misrepresentation made by Defendants.  In fact, Plaintiffs proclaim the opposite – they state repeatedly that "over 100 years of case law from the Washington Supreme Court" leaves no doubt that the easements BNSF held were "for railroad purposes only."  (Complaint, Dkt. No. 1 at ¶22.)  In their Response, Plaintiffs do not attempt to refute the fact that they have not successfully pled fraud.  (Response, Dkt. No. 35 at 5.)

Instead, Plaintiffs attempt to argue that the other torts they plead, such as trespass, inverse condemnation, unjust enrichment, and slander of title, should be construed as additional objects of and to have been accomplished through the alleged civil conspiracy. (*Id.*) This argument is unavailing. Plaintiffs entitle their civil conspiracy claim "Conspiracy to . . . Defraud" and that section makes no mention of trespass, inverse condemnation, slander of title, or unjust enrichment. Further, as the ensuing sections will show, neither were Plaintiffs' claims for trespass, inverse condemnation, and slander of title successfully pled against PSE.[12]

Accordingly, the Court GRANTS PSE's Motion to Dismiss with regard to Plaintiffs' claim for civil conspiracy.

2. *Trespass Claim*

In Count III, Plaintiffs allege that Defendants, including PSE, have unlawfully "placed water and sewer pipes, underground cable[s], underground power lines, overhead power lines, and/or other infrastructure beneath the subsurface or above the surface of Plaintiffs' property in the railroad corridor by affirmative acts" despite having "no ownership interest in the railroad corridor whatsoever" nor any "subsurface and aerial rights in the railroad corridor," due to the fact that "the easements purportedly granted by the Port to PSE and Sound Transit are invalid and unenforceable because the Port owned no property interest to convey." (Complaint, Dkt. No. 1 at ¶¶70-71.)

Under Washington law, the elements for intentional trespass are: "(1) an invasion affecting an interest in the exclusive possession of property; (2) an intentional doing of the act which results in the invasion; (3) reasonable foreseeability that the act done could result in an

—————————————————

[12] Plaintiffs do not bring unjust enrichment claims against PSE.

invasion of plaintiff's possessory interest; and (4) substantial damage to the res." *Seal v. Naches-Selah Irrigation District*, 51 Wash. App. 1, 5 (1988).

Plaintiffs' trespass claim is "threadbare" and insufficient to survive a motion to dismiss. The statement that "[u]pon information and belief, the Defendants have placed water and sewer pipes, underground cable[s], underground power lines, overhead power lines, and/or other infrastructure beneath the subsurface or above the surface of Plaintiffs' property" (Complaint, Dkt. No. 1 at ¶71) is a "naked assertion devoid of further factual enhancement." *See Iqbal*, 556 U.S. at 678.[13]  Such assertions do not raise Plaintiffs' claims above the speculative level, and cannot survive a motion to dismiss. *See Blantz v. California Department of Corrections*, 727 F.3d 917, 927 (9th Cir. 2013).

Not only is this bare assertion devoid of the factual details that would make it plausible, it is also contradicted by several statements repeated by Plaintiffs throughout their Complaint.  In characterizing the current situation, Plaintiffs state that PSE "*intends* to utilize the Plaintiffs' subsurface rights and aerial rights in the right-of-way pursuant to PSE's 'Easement Agreements' to place and maintain overhead and underground facilities and equipment," *connoting future, not present action*.  (*See e.g.,* Complaint, Dkt. No. 1 at ¶39.)  Allegations in a complaint are admissions binding on the maker. *American Title Insurance Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988).

_____

[13] Further, even if Plaintiffs had offered "further factual enhancement" for their claim that *Defendants* had placed cables and pipes under their property, this would not raise their claims against *PSE* above the speculative level, given that there are five Defendants, any one of whom could have installed this purported infrastructure. *See Jackson v. Nelson,* 405 F.2d 872, 873-74 (9th Cir. 1968) (affirming Rule 12(b)(6) dismissal where the court found that the individual defendants were not sufficiently referenced in the pleadings such that the court could not determine which defendant had committed which act).

1    Accordingly, the Court GRANTS PSE's Motion to Dismiss as to Plaintiffs' claim for

2    trespass.

3        3.   *Inverse Condemnation Claim*

4    In Count IV, Plaintiffs allege that the "Defendants *all* have the power of eminent domain

5    granted by the Washington legislature" but that Defendants, including PSE, "utilized Plaintiffs'

6    subsurface and aerial rights without paying Plaintiffs and without exercising their condemnation

7    rights." (Complaint, Dkt. No. 1 at ¶¶77, 79 (emphasis added).)  Plaintiffs claim that this entitles

8    them to "damages for the inverse condemnation of their land, [and] compensation for the value

9    of subsurface and aerial rights that have already been taken and sold." (*Id.* at 82.)

10

11   "The term 'inverse condemnation' is used to describe an action alleging a governmental

12   'taking' or 'damaging' that is brought to recover the value of property which has been

13   *appropriated in fact, but with no formal exercise of the power of eminent domain*." *Dickgieser v.*

14   *State*, 153 Wash. 2d 530, 534-35 (2005).  "A takings does not exist unless an invasion causes

15   damage properly characterized as permanent, or recurring, or chronic and unreasonable." *Citoli*

16   *v. City of Seattle,* 115 Wash. App. 459, 488 (2002).

17

18   Defendants argue that Plaintiffs' inverse condemnation claim makes no sense, as the

19   same Plaintiffs obtained a judgment of more than $141 million "based on the federal

20   government's taking of their reversionary interests when the corridor was railbanked," in the

21   Federal Claims case related to the instant matter, *Haggart v. United States*, 116 Fed. Cl. 131

22   (2014). (Motion to Dismiss, Dkt. No. 29 at 8-9.)  PSE argues that if the federal government

23   indeed appropriated the property, as Judge Lettow found, and was thus forced to pay just

24   compensation, then the state and municipal governmental entities could convey valid utility

25

26

ORDER GRANTING MOTIONS TO DISMISS
PAGE - 14

easements to PSE, and PSE could have no liability for inverse condemnation as a result of using (or intending to use) these easements.  (*Id.*)

The Court is compelled by this reasoning.  Even if all the facts alleged by Plaintiffs were true, the previous use of eminent domain and a paying of just compensation preclude later actions for inverse condemnation of the very same property.

Further, PSE submits that an inverse condemnation plaintiff must prove a "taking" that is greater than "a mere tortious interference."  (Motion, Dkt. No. 29 at 8 (quoting *Gaines v. Pierce County,* 66 Wash. App. 715, 725 (1992)).)  Meanwhile, Plaintiffs have stated that PSE merely "*intends* to utilize the Plaintiffs' subsurface rights and aerial rights in the right-of-way pursuant to PSE's 'Easement Agreements' to place and maintain overhead and underground facilities and equipment," *in the future*.  (Complaint, Dkt. No. 1 at ¶39.)  Even if the facts Plaintiffs allege were true, there could be no taking at the point that PSE merely (allegedly) *intends* to use Plaintiffs' property.

Accordingly, the Court GRANTS PSE's Motion to Dismiss as to Plaintiffs' claim for inverse condemnation.

### 4.  *Slander of Title Claim*

In Count V, Plaintiffs bring a slander of title claim against all Defendants, including PSE. Plaintiffs allege that PSE and the other Defendants "have acted as if, through both written and verbal statements, [] they own the underlying fee in the railroad corridor, including subsurface and aerial rights," which has "slandered Plaintiffs' actual fee ownership in the right of way and [has] thereby diminished the value of Plaintiffs' fee ownership in their property . . . and reduced the value of the property for resale."  (Complaint, Dkt. No. 1 at ¶¶ 85, 87, 89.)

1   "The necessary elements of a slander of title action are that the words: (1) must be false;

2   (2) must be maliciously published; (3) must be spoken with reference to some pending sale or

3   purchase of the property; (4) must result in a pecuniary loss or injury to the plaintiff; and (5)

4   must be such as to *defeat the plaintiff's title*." *Pay n' Save Corp. v. Eads*, 53 Wash. App. 443,

5   448 (1989).

6       PSE seeks dismissal because Plaintiffs "allege no facts that would show that PSE ever

7   claimed *fee ownership* to the detriment of the Plaintiffs.  Indeed the remainder of the complaint

8   alleges that PSE merely claims utility *easement* rights over the plaintiffs' properties." (Motion,

9   Dkt. No. 29 at 9 (emphasis added).)  The Court agrees.  This claim, given the facts incorporated

10  by reference, is not properly pled against PSE.  The specific facts alleged by Plaintiffs are

11  supportive of a claim against King County, but not PSE.  (*See e.g.,* Complaint, Dkt. No. 1 at

12  ¶88.)

13

14      PSE also seeks dismissal of this claim on the basis that Plaintiffs have not alleged facts

15  sufficient to suggest that it has interfered with any pending sale of the Plaintiffs' property,

16  causing pecuniary loss or injury.  The Court finds this to offer additional grounds supporting

17  dismissal of this claim.  Plaintiffs merely plead that their property values have declined because

18  their property rights in the corridor have been usurped by PSE.  (Complaint, Dkt. No. 1 at ¶89.)

19  Plaintiffs do not allege that PSE made statements "with reference to some pending sale or

20  purchase of the property" that resulted in some "pecuniary loss or injury" to them.  Plaintiffs do

21  not plead that there is any pending sale of their land in which they expect to receive less than

22  they would have before PSE allegedly claimed title to their land.  A single, general, vague

23  reference to "resale" (*see id.*) is insufficient to allege a connection to a pending sale or purchase

24  of the property by Plaintiffs.

25

26

Plaintiffs' statement that the "slander of title action stems from the sale of property interests owned by Plaintiffs *by the Defendants*" (Response, Dkt. No. 35 at 8 (emphasis added)), is unavailing. "Slander of title is *only* available where the defendant has interfered with the *plaintiff's* sale of the property. . . Where no sale is pending, contemplated, or has even been attempted, [a] speculative assertion [that defendant has cast plaintiff's title into doubt] is insufficient to support a slander of title claim." *Lapinski v. Bank of America,* 2014 WL 347274 at *5 (W.D. Wash., Jan. 30, 2014) (emphasis added) (granting motion to dismiss slander of title claim *without leave to amend*). *See also Pay N' Sav,* 53 Wash. App. at 448 (affirming trial court's dismissal of slander of title claim where plaintiff conceded that no sale or purchase of the property was pending); *Teegarden v. MERS, Inc.,* 2014 WL 7213189 at *4 (W.D. Wash., Dec. 17, 2014) (same).

Accordingly, the Court GRANTS PSE's Motion to Dismiss as to Plaintiffs' claim for slander of title.

In sum, Plaintiffs' claims against PSE for conspiracy to defraud, trespass, inverse condemnation, and slander of title are all dismissed with prejudice, without leave to amend.[14]

## IV. Conclusion

For the foregoing reasons, the moving Governmental Defendants' Motion to Dismiss

---

[14] "Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile." *Lapinski,* 2014 WL 347274 at *2. "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts *consistent with the challenged pleading* could not possibly cure the deficiency." *Alvarez v. Chevron Corp.,* 656 F.3d 925, 935 (9th Cir. 2011) (emphasis added). In their Response, Plaintiffs failed to provide the Court with any additional facts that could raise their claims above the speculative level, nor could they, consistently, with the judicial admissions they have made in their Complaint. *See American Title Insurance Co*., 861 F.2d at 226 (explaining that allegations in a complaint are admissions binding on the maker).

1  Tort Claims (Dkt. No. 23) and Defendant Puget Sound Energy's Motion to Dismiss (Dkt. No.

2  29) are both GRANTED.

3          DATED this 30th day of June 2015.

4

5

6

7

8          _____

9          John C. Coughenour

10         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTIONS TO DISMISS
PAGE - 18