THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH A. IOPPOLO, et al.,

Plaintiffs,

v.

PORT OF SEATTLE, et al.,

Defendants.

CASE NO. C15-0358-JCC

ORDER GRANTING DEFENDANT
KING COUNTY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Defendant King County's Motion for Summary Judgment to Dismiss Inverse Condemnation Claim (Dkt. No. 46), Defendant Sound Transit's Joinder of the motion (Dkt. No. 48), Plaintiff's Opposition (Dkt. No. 51), and Defendant King County's Reply (Dkt. No. 53). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion and CLOSES the case for the reasons explained herein.

I.    BACKGROUND

This case is a putative class action seeking money damages for Defendants' allegedly tortious usurpation of Plaintiffs' property. The above-captioned matter and a related case before this Court, *Kaseburg, et al. v. Port of Seattle, et al.,* C14-0784-JCC, arise out of the railbanking of a former BNSF Railway corridor on the eastern shores of Lake Washington. (Dkt. No. 1 at 8.) The Port of Seattle and King County received an interest in the corridor from BNSF via

operation of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act"). (*Id.* at ¶ 38.) Plaintiffs maintain that BNSF's interest was limited to a surface easement for a hiking and biking trail "with the possible reactivation of a railroad." (*Id.*) In both the instant case and in *Kaseburg,* Plaintiffs claim that Defendants have unlawfully expanded the scope of this interest. (*Id.*)

A.      **The Present Litigation**

Plaintiffs, on behalf of all landowners who owned land adjacent to the Eastside rail corridor, brought this putative class action against several state and municipal entities, namely the Port of Seattle, King County, Central Puget Sound Regional Transit Authority (Sound Transit), and Cascade Water Alliance, and also against a for-profit, private corporation, Puget Sound Energy, Inc. (*Id.* at 5.) Plaintiffs brought several tort-based claims: conspiracy to illegally utilize the Trails Act to defraud Plaintiffs of their property rights (against all Defendants); trespass (against King County, Puget Sound Energy, Sound Transit, and Cascade); inverse condemnation (against King County, Puget Sound Energy, Sound Transit, and Cascade); slander of title (against all Defendants); and unjust enrichment (against the Port). (*Id.* at 16–23.)

After this Court's ruling on multiple motions to dismiss, the sole remaining claim is for inverse condemnation against King County and Sound Transit.[1] King County moves for summary judgment in its favor over this inverse condemnation claim, and Sound Transit joins (Dkt. No. 48). As a preliminary matter, the Court GRANTS Sound Transit's motion for joinder. (Dkt. No. 48).

Plaintiffs allege that:

The Port, through Quit Claim Deed from BNSF, and pursuant to the Trails Act, acquired BNSF's easement over the surface of the [railroad corridor], which pursuant to the Trails Act, is now an easement for a hiking and biking trail with

---

[1] In the Court's previous ruling, it dismissed all claims against the Port (Dkt. No. 45 at 9), all claims against Puget Sound Energy (Dkt. No. 45 at 12, 14, 15, and 17), and the conspiracy, trespass, and slander of title claims against King County and Sound Transit (Dkt. No. 45 at 9). Defendant Cascade has been voluntarily dismissed as a party and all claims against it are dismissed with prejudice. (Dkt. No. 43.)

1
2
3
4

the possible reactivation of a railroad. The Port, then, pursuant to agreements with King County, assigned some of the surface rights in the railroad corridor to King County and then improperly and illegally attempted to usurp the landowners' fee interests in the aerial rights and improperly and illegally retained all rights to negotiate agreements with other utilities for the use of the right-of-way, including subsurface and aerial rights, which the Port had no rights to, and claimed all revenues derived from any such agreements.

5  (Dkt. No. 1 at ¶ 38.)

6  Plaintiffs' inverse condemnation claim stems from their allegation that the Port granted

7  aerial and subsurface rights to King County and Sound Transit, outside the scope of the Trails

8  Act and the BNSF easement. Specifically, with respect to Sound Transit, Plaintiffs allege that

9  "the Port . . . granted a purported perpetual High Capacity Transportation Easement to Sound

10  Transit on April 11, 2012 . . . [which] includes 'the right to own or operate a High Capacity

11  Transit System . . . in, on, under, over, along, across, and through the Property.'" (*Id.* at ¶ 40.)

12  According to Plaintiffs, "Sound Transit's easement from the Port is also invalid and

13  unenforceable." (*Id.* at ¶ 44.) With respect to King County, Plaintiffs take issue with, *inter alia*,

14  its adoption of Ordinance No. 17503, authorizing the purchase of approximately 15 miles of

15  corridor from the Port. (*Id.* at ¶ 41.) Plaintiffs allege that King County's interest in the railway

16  corridor pursuant to its Quit Claim Deed from the Port was limited to surface rights and any

17  purported ownership of subsurface or aerial rights by King County are therefore invalid and

18  unenforceable. (*Id.* at ¶ 44.)

19  **B.    *Kaseburg***

20  *Kaseburg, et al. v. Port of Seattle, et al.,* C14-0784-JCC, is also pending before this

21  Court. The *Kaseburg* case involves, among many others, four of the Plaintiffs to the present

22  litigation: Scott Kaseburg, Kathryn Kaseburg, David McCray, and Sally McCray. (*See* Dkt. No.

23  1; C14-0784 at Dkt. No. 1-2.) While *Kaseburg* involves questions of quiet title over the parties'

24  respective interests in the railway corridor, the present suit seeks money damages. (*See id.*)

25  **C.    *Haggart***

26  The nature and history of the BNSF easement in question here was discussed by Judge

ORDER GRANTING DEFENDANT KING
COUNTY'S MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 3

Charles F. Lettow of the United States Court of Federal Claims in a previous case, *Haggart, et al. v. United States*, 108 Fed. Cl. 70 (2012) (determining that a taking had occurred) 116 Fed. Cl. 131 (2014) (approving settlement amount).

Of particular importance here is the fact that the litigants in *Haggart* were compensated approximately $141 million, pursuant to a settlement, based on the government taking of the reversionary interests in the railbanked corridor. *Haggart*, 116 Fed. Cl. at 149. In other words, in *Haggart*, members of the class of named and opt-in plaintiffs were compensated for the fact that the conveyance by BNSF pursuant to the Trails Act exceeded the preexisting scope of the easement: the very claim asserted here. *Haggart v. United States*, 108 Fed. Cl. 70, 75 (2012) ("The Court concludes that the government is liable to . . . plaintiffs . . . for the taking of their property by issuing the trail-use authorizations when the rail easements did not encompass that use.")

Neither party disputes that the Plaintiffs to the above-captioned matter were part of the class compensated by the settlement in *Haggart*. (*See* Dkt. No. 51 at 3) (conceding that Plaintiffs were "compensated for the imposition of a surface easement in *Haggart*").[2] Rather, Plaintiffs here argue that the compensation in *Haggart* was limited to their surface rights and did not compensate them for the subsurface and aerial rights which they allege here constitute an additional taking. (Dkt. No. 51 at 3.)

## II.   DISCUSSION

### A.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[2] *See also Haggart*, C09-cv-0103-CFL at Dkt. No. 41 at 1 (listing Frey Reed Building, LLC, Floor Craft Building, LLC, and Car Lot LLC as named plaintiffs); Dkt. No. 76-2 at 3, 4, 6 (designating Joseph Ioppolo, David and Sally McCray, and Woodinville Landing, LLC as "Subclass Two" plaintiffs); and Dkt. No. 76-4 at 2, 4, and 6 (designating Car Lot, LLC, Floor Craft Building, LLC, Frey Reed Building, LLC, and Scott and Kathryn Kaseburg as "Subclass Four" plantiffs).

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Facts or declarations made in support of, or opposition to, a motion for summary judgment must be based on personal knowledge and otherwise admissible in evidence. Fed. R. Civ. P. 56(c)(4).

**B.    Inverse Condemnation**

Plaintiffs allege that Defendants, including King County and Sound Transit, "utilized Plaintiffs' subsurface and aerial rights without paying Plaintiffs and without exercising their condemnation rights." (Dkt. No. 1 at ¶¶ 77, 79.) Plaintiffs claim that this entitles them to "damages for the inverse condemnation of their land, [and] compensation for the value of subsurface and aerial rights that have already been taken and sold." (*Id.* at 82.)

"The term 'inverse condemnation' is used to describe an action alleging a governmental 'taking' or 'damaging' that is brought to recover the value of property which has been appropriated in fact, but with no formal exercise of the power of eminent domain." *Dickgieser v. State*, 153 Wash. 2d 530, 534–35 (2005). "A takings does not exist unless an invasion causes

damage properly characterized as permanent, or recurring, or chronic and unreasonable." *Citoli v. City of Seattle,* 115 Wash. App. 459, 488 (2002). To establish inverse condemnation, a litigant must show: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings. *Dickgieser v. State*, 153 Wash. 2d 530, 535 (2005) (citing *Phillips v. King County*, 136 Wash.2d 946, 957 (1998)).

Despite the fact that discovery has been limited, the Court concludes that there remains no genuine issue of material fact as to whether King County or Sound Transit may be liable to Plaintiffs under an inverse condemnation claim. The Court rules in this manner for two reasons. First, based on undisputed facts before this Court, a "taking" has not occurred—or at least, has not yet occurred. Second, and more importantly, to the extent that the expansion of the BNSF easement exceeded its original scope and amounted to a taking, Plaintiffs have already received just compensation under the settlement in *Haggart.*

1.      **A "Taking" With Respect to Aerial or Subsurface Rights Has Not Occurred**

"A 'taking' occurs when government invades or interferes with the use and enjoyment of property, and its market value declines as a result . . . There must be an invasion that is permanent or recurring." *Gaines v. Pierce Cnty.*, 66 Wash. App. 715, 725–26 (1992) (internal citations omitted). As the Court previously ruled, "there could be no taking at the point that [Defendants] merely *intend*[] to use Plaintiffs' property." (Dkt. No. 45 at 15.) Plaintiffs have not presented any facts to demonstrate a genuine dispute as to whether an actual taking has occurred with respect to aerial or subsurface rights.

Based on the record before the Court, there is no genuine dispute of material fact[3] as to whether King County has actually used the corridor in question. (*See* Dkt. No. 47.) As stated in

---

[3] The Court notes that, with respect to the determination of the factual issue, it is limited to the Declaration of Erica Jacobs (Dkt. No. 47) as Plaintiffs' assertions in their briefing do not constitute admissible evidence based on personal, firsthand knowledge. Fed. R. Civ. P. 56(c)(4).

ORDER GRANTING DEFENDANT KING
COUNTY'S MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 6

1   the Declaration of Erica Jacobs, the Special Projects Manager tasked with trail planning for King

2   County's Parks and Recreation Division, the County is "at the very preliminary stages of

3   developing a trail and has no immediate plans for any other uses of the Corridor." (*Id.* at ¶ 3.)

4         With respect to Sound Transit, there exists no voter-approved, affirmative plan for use of

5   any of the corridor in which Plaintiffs have a property interest. (Dkt. No. 49.)

6   **2.**     **Just Compensation Has Already Been Awarded**

7         Even more notably, to the extent that the conveyance of the former BNSF easement for

8   the purposes of a trail constituted a taking, Plaintiffs have already all received just compensation

9   from the government pursuant to the settlement in *Haggart.*

10         Plaintiffs were compensated as part of a large judgment of more than $141 million "based

11   on the federal government's taking of their reversionary interests when the corridor was

12   railbanked," in the Federal Claims case related to the instant matter, *Haggart v. United States*,

13   116 Fed. Cl. 131 (2014). (*See also* Dkt. No. 29 at 8–9.) As this Court has already ruled, "the

14   previous use of eminent domain and a paying of just compensation preclude later actions for

15   inverse condemnation of the very same property." (Dkt. No. 45 at 5.)

16         In *Haggart*, Plaintiffs were compensated based on the taking that occurred when the

17   government expanded a railway easement into an easement intended for a purpose other than

18   operating a railroad: in this instance, a hiking and biking trail. *Haggart*, 108 Fed. Cl. 70, 78

19   (citing *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010) ("It is settled law that a Fifth

20   Amendment taking occurs in Rails-to-Trails cases when government action destroys state-

21   defined property rights by converting a railway easement to a recreational trail, *if the trail use is*

22   *outside the scope of the original railway easement.*") (emphasis in original). In so finding, the

23   *Haggart* Court made no mention of a limitation with respect to surface rights as opposed to

24   subsurface or aerial rights. *See generally Haggart*, 108 Fed. Cl. 70 (2012). In sum, to the extent

25   that the conduct of the Port of Seattle and remaining Defendants King County and Sound Transit

26   may have rightfully been construed as a "taking," Plaintiffs have already received just

compensation for that taking. Accordingly, Plaintiffs cannot meet the elements of an inverse condemnation claim.

Moreover, as members of the class action in *Haggart*, Plaintiffs were beholden to pursue the claims available to them in the earlier litigation. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1080 (9th Cir. 2003) (where a takings claim involved the "same nucleus of facts" as a prior claim resulting in final judgment, "any claim concerning that conduct could have been brought in the prior action.").

## III.   CONCLUSION

For the foregoing reasons, Defendant King County's Motion for Partial Summary Judgment (Dkt. No. 46) is GRANTED. Plaintiffs' sole remaining claim for inverse condemnation against King County and Sound Transit is DISMISSED. Accordingly, the Clerk is directed to CLOSE this case.

DATED this 11 day of September 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT KING
COUNTY'S MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 8